William Edward NICHOLS and wife Donna Nichols, as next of kin and surviving parents of Andrew Edward Nichols, deceased, Plaintiffs/Appellants,

and

Ray Thomas Murphy and wife Mary Helen Murphy, as next of kin and surviving parents of Bryan Thomas Murphy, Plaintiffs/Appellants,

v.

Robert Roy ATNIP, Sr. and Guylene Mathis Atnip, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 2, 1992.

Application for Permission to Appeal Denied by Supreme Court Dec. 21, 1992.

Marshall E. Duggin, Woodbury, for plaintiff/appellant William and Donna Nichols.

Douglas S. Hale, for plaintiff/appellant Ray and Mary Murphy.

David A. King, Nashville, Cornelius & Collins, Daniel H. Rader, III, Moore, Jones, Rader & Clift, Cookeville, Frank Buck, Smithville, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves two parents' liability for the negligence of their teenage son. The parents of two teenage boys who were killed by an intoxicated eighteen-year-old driver filed separate wrongful death actions against the driver's parents in the Circuit Court for DeKalb County alleging negligent supervision, negligent entrustment, and statutory parental liability. The trial court granted the driver's parents' motion for summary judgment and dismissed the complaints. We affirm.

## I.

Robert R. Atnip, Jr. lived with his parents in Smithville. He began drinking and experimenting with drugs before he entered high school and "stayed drunk through most of his adolescence." By October 1985 when he became old enough to obtain a driver's license, he was a consistent, habitual abuser of alcohol and marijuana. His substance abuse impaired his performance in school and caused him to lose several part-time jobs.

Mr. Atnip's parents were aware of his substance abuse problem but viewed it as part of the maturation process. They permitted him to purchase and operate a car and even assisted him by paying several of his insurance premiums, occasionally buying him tires, and giving him money from time to time for gas and oil. They also controlled his use of the car by withdrawing or threatening to withdraw his driving privileges when he misused his car. Within the first two or three years after Mr. Atnip obtained his driver's license, his parents revoked his driving privileges approximately five times.

The young man's driving record reflected his substance abuse. Within four months after his sixteenth birthday, he was involved in his first property damage accident. During 1987, he received nine citations for speeding or other moving violations and one citation for driving while intoxicated. He was also involved in his second property damage accident. His third property damage accident occurred in February 1988.

Dr. and Mrs. Atnip did not totally curtail their son's driving despite his conduct. In fact, after the boy destroyed his car in July 1987 by driving it into a ditch, Dr. Atnip found another car for his son to buy and continued to help him by paying for his insurance, buying him tires, and providing him money for gas and oil.

Mr. Atnip spent the morning of June 28, 1988 working on his grandfather's farm. After returning home, he picked up a friend and began to drive around drinking beer and vodka. They picked up two girls and drove to a rendezvous called "Redneck Beach" where they planned to spend the rest of the day and evening drinking and passing the time. Their idyll was cut short when one of the girls insisted on being driven home. Even though he had been drinking heavily, Mr. Atnip agreed to drive her home.

Several minutes after dropping off his companion at her home, Mr. Atnip slammed

his car into the rear of a car being driven by Bryan Murphy. Mr. Murphy and Andrew Nichols, one of his passengers were killed, and Richard McFerrin, another passenger, was seriously injured. Mr. Atnip was speeding when the accident occurred and did not notice that Mr. Murphy had slowed and was preparing to turn right. Mr. Atnip's blood alcohol level at the time of the accident was .21%.[1]

Mr. Atnip was charged with two counts of vehicular homicide by intoxication and one count of aggravated assault. In addition, his victims' parents filed wrongful death actions against him. Mr. Atnip pled guilty to the criminal charges in August 1989. In June 1990, Mr. Murphy's and Mr. Nichols's parents also filed suit against Dr. and Mrs. Atnip, alleging that they were also liable for the deaths of their children. In October 1990, a DeKalb County jury returned a judgment against Mr. Atnip for $150,000 in actual and $150,000 in punitive damages. In April 1991, the trial court filed an order granting Dr. and Mrs. Atnip's motion for summary judgment and dismissing the Nichols' and the Murphys' complaint. This appeal followed.

## II.

The trial court did not explain its reasons for granting Dr. and Mrs. Atnip's motion for summary judgment. Consistent with Tenn.R.Civ.P. 56.03, the trial court must necessarily have concluded.that no material factual issues existed and that the Atnips were entitled to a dismissal of each of the plaintiffs' claims as a matter of law.

## A.

▮ Summary judgments provide an appropriate way to dispose of claims that can be decided based on legal issues alone. *Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988); *Brookins v. The Round Table, Inc.,* 624 S.W.2d 547, 550 (Tenn.1981); *Hemlick v. Northway Ctr. Assocs.,* 817 S.W.2d 323, 325 (Tenn.Ct.App. 1991). Thus, they may be used in negligence cases where the dispositive issue is

whether the defendant owed a duty to the plaintiff since the existence of a duty is always a question of law for the court. *Dooley v. Everett,* 805 S.W.2d 380, 384 (Tenn.Ct.App.1990); *Kelley v. Johnson,* 796 S.W.2d 155, 157 (Tenn.Ct.App.1990); *Dill v. Gamble Asphalt Materials,* 594 S.W.2d 719, 721 (Tenn.Ct.App.1979).

The grounds for the Atnips' summary judgment motion are somewhat unclear since they failed to heed Tenn.R.Civ.P. 7.02(1)'s admonition that motions must "state with particularity the grounds therefor." Their motion states only that "the plaintiffs have failed to state a claim against them upon which relief can be granted under the circumstances of this case." The memorandum of law supporting the motion does little to bring this overly broad allusion to Tenn.R.Civ.P. 12.-02(6) into sharper focus.

The most reasonable interpretation of the Atnips' motion is that they were challenging the legal, as opposed to factual, basis for the complaints. Accordingly, we will examine each of the three causes of action contained in the Murphys' and Nichols's complaints to determine whether the Atnips were entitled to summary dismissal of the complaints as a matter of law.

## B.

### The Claims Based on Tenn.Code Ann. § 37–10–103 (1991)

The plaintiffs first assert that the Atnips are liable for their son's negligent acts under Tenn.Code Ann. § 37–10–103 because he was unemancipated when the accident occurred. We disagree. Tenn.Code Ann. § 37–10–103 has no application to this case because Robert Atnip, Jr. was fully emancipated as a matter of law when he reached his eighteenth birthday.

Parents were not liable for their children's torts at common law. *Bocock v. Rose,* 213 Tenn. 195, 201, 373 S.W.2d 441, 444 (1963); *Stanley v. Joslin,* 757 S.W.2d 328, 330 (Tenn.Ct.App.1987). However, the General Assembly imposed liability on par-

---

1. Tenn.Code Ann. § 55–10–408(b) (1988) establishes a presumption that a person is under the

influence if the amount of alcohol in his or her blood is .10% or more by weight.

ents twenty-five years ago by statute. Tenn.Code Ann. § 37–10–103(a) now provides that

A parent or guardian shall be liable for the tortious activities of a minor child that causes injuries to persons or property where the parent or guardian knows, or should know, of the child's tendency to commit wrongful acts which can be expected to cause injury to persons or property and where the parent or guardian has an opportunity to control the child but fails to exercise reasonable means to restrain the tortious conduct.

■ In going about determining the General Assembly's intent when it enacted this statute, we must give the words their natural and ordinary meaning. *State v. Williams,* 690 S.W.2d 517, 529 (Tenn.1985). We should also keep in mind that the courts should not displace the common law any more than is necessarily required, *In re Deskins' Estate,* 214 Tenn. 608, 611, 381 S.W.2d 921, 922 (1964), and should take care not to restrict the statute's coverage unduly or to expand it beyond its intended scope. *United States v. Bacto–Unidisk,* 394 U.S. 784, 800–01, 89 S.Ct. 1410, 1419, 22 L.Ed.2d 726 (1969).

■ Tenn.Code Ann. § 37–10–103(a) applies only to parents of minor children. Tenn.Code Ann. § 1–3–105(1) (Supp.1992) defines a "minor" as "any person who has not attained the age of eighteen (18) years." Robert Atnip, Jr. was over 18–years–old when he caused the deaths of Bryan Murphy and Andrew Nichols. Since he was not a minor at the time of the accident, his parents cannot be held liable for his conduct under Tenn.Code Ann. § 37–10–103(a) as a matter of law.

Even though Robert Atnip, Jr. had reached the age of majority when the accident occurred, the Murphys and the Nichols argue that he should be considered to be a minor for the purpose of Tenn.Code Ann. § 37–10–103(a) because he was not fully emancipated and because his substance abuse had rendered him emotionally equivalent to a 15–year–old. We disagree.

These arguments overlook Tenn.Code Ann. § 1–3–113(a) (Supp.1992) which provides:

Notwithstanding any laws to the contrary, any person who is eighteen (18) years of age or older shall have the same rights, duties, and responsibilities as a person who is twenty-one (21) years of age, except as provided in subsection (b) relative to the rights to purchase, possess, transport, and consume alcoholic beverages, wine, or beer as those terms are defined in title 57.

■ Emancipation may occur by operation of law. *Glover v. Glover,* 44 Tenn. App. 712, 720, 319 S.W.2d 238, 241 (1958). The enactment of Tenn.Code Ann. § 1–3–113(a) completely emancipated those over eighteen years of age from the control of their parents. *Garey v. Garey,* 482 S.W.2d 133, 135 (Tenn.1972). Accordingly, Robert Atnip, Jr. became completely emancipated in the eyes of the law when he became eighteen years old, even though he continued to live in his parents' home. *Glover v. Glover,* 44 Tenn.App. at 725, 319 S.W.2d at 243 (complete emancipation can occur even though the child continues to live with his or her parents).

### C.

*The Negligent Entrustment Claims*

The plaintiffs also assert that Dr. and Mrs. Atnip are liable for their sons' deaths under a negligent entrustment theory. The factual basis for their claims is that the Atnips, in effect, provided their son with a car by helping him with his car expenses. We have determined that the plaintiffs cannot make out a negligent entrustment claim against the Atnips as a matter of law.

■ The four elements of a negligent entrustment claim are (1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another. *Chiniche v. Smith,* 374 So.2d 872, 876 (Ala. 1979) (Torbert, C.J., concurring). The prin-

ciple, as stated in the Restatement (Second) of Torts § 390 (1964) is that

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm to them.

Tennessee's courts have recognized the tort in cases where automobiles or firearms were supplied to incompetent users. Thus, persons who "entrust" or supply an automobile to a person known to be habitually intoxicated or who permit an inexperienced teenage boy to use a shotgun may be held liable for the injuries proximately caused by the negligent use of the automobile or shotgun. *V.L. Nicholson Constr. Co. v. Lane,* 177 Tenn. 440, 442–43, 150 S.W.2d 1069, 1070 (1941) (automobile); *Prater v. Burns,* 525 S.W.2d 846, 849–50 (Tenn.Ct. App.1975) (shotgun).

All parties have devoted considerable effort to explain their opposing positions concerning how this court's decision in *Brown v. Harkleroad,* 39 Tenn.App. 657, 287 S.W.2d 92 (1956) affects the plaintiff's negligent entrustment claims. In *Harkleroad,* the Eastern Section held that persons injured by an intoxicated driver could not sue the driver's father because he had given, as opposed to loaned, his son the car that was involved in the accident. Thus, the Eastern Section limited negligent entrustment causes of action to situations involving some sort of bailment.

We need not address *Harkleroad's* continuing validity here because this case can be decided on other grounds. It is sufficient to point out at this juncture that the *Harkleroad* decision is contrary to Restatement (Second) of Torts § 390 (1964) and has been criticized by many courts and legal scholars. W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 104, at

718 (5th ed. 1984) ("Prosser & Keeton") ("such decisions ... look definitely wrong"); *Talbott v. Csakany,* 199 Cal. App.3d 700, 245 Cal.Rptr. 136, 138–39 (1988); *Kahlenberg v. Goldstein,* 290 Md. 477, 431 A.2d 76, 83 (1981); *Vince v. Wilson,* 151 Vt. 425, 561 A.2d 103, 105 (1989).

■ Two of the necessary ingredients of a negligent entrustment claim are the entrustment itself and a causal relationship between the entrustment and the plaintiff's injury or damage. Both of these ingredients are missing in this case.

The Atnips did not supply or entrust their son with the automobile involved in the accident in this case. Their son purchased the automobile with his own funds and held title in his own name. The only items the Atnips provided to their son were tires, occasional gas money, and payment of some of his insurance premiums. There is no proof of any direct causal relationship between these items and the June 28, 1988 accident or that Robert Atnip, Jr. would not have been able to drive his car had his parents not helped him with some of the expenses.

We have discovered only two cases where courts have recognized negligent entrustment claims against persons who gave an intoxicated driver the means to operate his automobile. *O'Toole v. Carlsbad Shell Serv. Station,* 202 Cal.App.3d 151, 247 Cal. Rptr. 663, 669–70 (1988) (sale of gasoline to an obviously intoxicated driver);[2] *Lombardo v. Hoag,* 237 N.J.Super. 87, 566 A.2d 1185, 1188–89 (1989) (passenger returned keys to an obviously intoxicated driver). However, other courts have reached diametrically different conclusions. *Knighten v. Sam's Parking Valet,* 206 Cal.App.3d 69, 253 Cal.Rptr. 365, 366–68 (1989) (returning keys to an intoxicated driver); *Sampson v. W.F. Enters., Inc.,* 611 S.W.2d 333, 338 (Mo.Ct.App.1980) (returning keys to an intoxicated driver); *Mejia v. Erwin,* 45 Wash.App. 700, 726 P.2d 1032, 1034 (1986) (father provided credit card to son to rent an automobile).

---

**2.** The precedential value of this decision is undermined by the California Supreme Court's direction that it should not be officially published.

The Atnips' conduct in this case, at least insofar as the negligent entrustment claim is concerned, more closely resembles the father's conduct in *Mejia v. Erwin* than the conduct in the cases finding liability. They did not entrust the automobile to their son, and the plaintiffs have failed to establish a causal connection between the items they did supply and the accident that caused the death of the plaintiffs' children. Accordingly, the negligent entrustment claims against the Atnips cannot succeed as a matter of law.

## D.

### *The Negligent Supervision Claims*

The plaintiffs also assert that the Atnips were negligent because they did not adequately supervise their son's use of his own automobile. The trial court dismissed this claim, apparently concluding that parents cannot, as a matter of law, be liable for the negligent acts of their adult children. We have determined that the trial court reached the correct result but only because the plaintiffs have failed to demonstrate or prove that the Atnips had a duty to protect the general public from their son's negligent conduct.

While duty was not part of the early English common-law understanding of tort liability,[3] it has now become an essential ingredient in negligence cases. Thus, no claim for negligence can succeed in the absence of any one of the following ingredients: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) injury or damage to the plaintiff, and (4) a proximate causal relationship between the breach of duty and the injury. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991); *Shouse v. Otis*, 224 Tenn. 1, 7, 448 S.W.2d 673, 676 (1969); *Fly v. Cannon*, 813 S.W.2d 458, 461 (Tenn.Ct.App.1991).

The concept of duty involves the relationships between individuals which impose upon one person a legal obligation for another's benefit. *Lindsey v. Miami Dev. Co.*, 689 S.W.2d 856, 858–59 (Tenn.1985); Prosser & Keeton § 53, at 356. It reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's acts or conduct. *See Kirk v. Michael Reese Hosp. & Medical Ctr.*, 117 Ill.2d 507, 111 Ill.Dec. 944, 953–54, 513 N.E.2d 387, 396–97 (1987).

■ All persons have a duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others. However, they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own. Restatement (Second) of Torts § 314 (1964). Accordingly,

> while an actor is always bound to prevent his acts from creating an unreasonable risk to others, he is under the affirmative duty to act to prevent another from sustaining harm only when certain socially recognized relations exist which constitute the basis for such legal duty.

Fowler v. Harper & Posey M. Kime, *The Duty to Control the Conduct of Another*, 43 Yale L.J. 886, 887 (1934).

■ As a general rule, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to others. The duty may arise, however, in three distinct circumstances: first, when a "special relation" exists between the person and the individual whose conduct threatens to cause harm;[4] second, when a "special relation" exists between the person and the individual exposed to the harm;[5] and third, when the person has control over another's use of a thing that could create an unreasonable risk of harm to others.[6] The Tennessee Supreme Court has illustrated how this duty arises with regard to a passenger's duty to control the driver of an automobile by stating that

**3.** Percy H. Winfield, *Duty in Tortious Negligence*, 34 Col.L.Rev. 41, 65 (1934).

**4.** Restatement (Second) of Torts § 315(a) (1964).

**5.** Restatement (Second) of Torts § 315(b) (1964).

**6.** Restatement (Second) of Torts § 308 (1964).

A passenger has no duty to the public to control or to attempt to control the operation of a vehicle where he has no right to do so either as a result of his relationship to it [the vehicle] or to the driver.

*Cecil v. Hardin,* 575 S.W.2d 268, 270 (Tenn.1978).

■ The essential inquiry in any negligence case is whether the particular defendant is under a legally recognized duty to a particular plaintiff. *Dooley v. Everett,* 805 S.W.2d at 384. The plaintiffs in this case have neither alleged nor proved the existence of any of the circumstances that would have required the Atnips to protect the public from the negligent conduct of their adult son.

■ The plaintiffs have not pointed to any of the "special relations" envisioned by Restatement (Second) of Torts § 315(b) (1964) that would have required the Atnips to protect their sons from injury. These special relations are limited to common carriers, innkeepers, and certain persons having custody of others. Restatement (Second) §§ 314A & 315 cmt. c (1964).

Similarly, the plaintiffs have not pointed to any "special relation" envisioned by Restatement (Second) of Torts § 315(a) (1964) between the Atnips and their own son that would have required them to control his conduct. These special relations include those between parents and their minor children,[7] masters and their servants,[8] and persons having custody of persons with dangerous propensities.[9] The Restatement recognizes another special relationship between property owners and their guests which this court has specifically declined to adopt. *Wilkerson v. Altizer,* 845 S.W.2d 744, 748 (Tenn.App.1992), *perm. app. filed* (Tenn. Aug. 12, 1992).

■ Restatement (Second) of Torts § 316 (1964) is not applicable to this case because Robert Atnip was a fully emancipated adult when the accident occurred. The family relationship alone is not a "spe-cial relation" because it does not necessarily carry with it the capacity or authority to control. *Ollice v. Pugh,* App. No. 87–7–II, slip op. at 7, 12 T.A.M. 27–7, 1987 WL 4902 (Tenn.Ct.App. May 27, 1987) (wife had no duty to control husband); *Neale v. Wright,* 322 Md. 8, 585 A.2d 196, 201 (1991) (wife-husband); *Kaminski v. Town of Fairfield,* 216 Conn. 29, 578 A.2d 1048, 1052 (1990) (parent-adult child); *Reinert v. Dolezel,* 147 Mich.App. 149, 383 N.W.2d 148, 151 (1986) (parent-adult child); *Alioto v. Marnell,* 402 Mass. 36, 520 N.E.2d 1284, 1286 (1988) (parent-adult child).

■ Finally, the plaintiffs have not demonstrated that the Atnips had the power or the means to control their son's car directly. Viewing the evidence in the light most favorable to the plaintiffs, the Atnips occasionally exercised control over their son's use of his car between the time he obtained his driver's license and the accident. There is no indication that they exercised, or were able to exercise, control over their son's car after he became an adult. The fact that they might have prevented their son from driving on prior occasions does not give rise to a continuing duty to control their adult son's driving. *See Knighten v. Sam's Parking Valet,* 253 Cal.Rptr. at 367.

The common law rule that persons have no duty to protect others from harm they did not cause, while harsh, remains the law. It is perhaps inevitable that extreme cases involving morally outrageous and indefensible conduct will cause inroads into this rule. Restatement (Second) of Torts § 314 cmt. c (1964).

The public's concern over the tragic epidemic of injury and death caused by drunk drivers may very well provide some of these exceptional cases. However, unlike the New Jersey Superior Court, our concern over drunk driving does not compel us to abandon the traditional common-law rule in favor of one requiring a person to "exercise a duty of care towards another person in order to insure that the other person

---

7. Restatement (Second) of Torts § 316 (1964).

8. Restatement (Second) of Torts § 317 (1964).

9. Restatement (Second) of Torts § 319 (1964).

remains free from harm, if he can do so without peril to himself." *Lombardo v. Hoag,* 566 A.2d at 1189. Without this rule or another closely akin to it, there is no basis under the facts before us to conclude that the Atnips should be held liable for the manner in which they were supervising their adult son.

### III.

We affirm the summary judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal in equal proportions to William Edward and Donna Nichols and to Ray Thomas and Mary Helen Murphy for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.