# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT KNOXVILLE

_____

**FILED**

**December 11, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **JOHN LEE NEWTON and**,<br>**VICTORIA CARTER NEWTON**, ) | Knox County Circuit Court<br>No. 2-397-95 |
| Plaintiffs/Appellants. ) | |
| VS. ) | C.A. No. 03A01-9706-CV-00204 |
| **DENISE TINSLEY, Individually and as**<br>**ADMINISTRATRIX OF THE**<br>**ESTATE OF CARL THOMAS**<br>**TINSLEY**, ) | |
| Defendant/Appellee. ) | |

_____

From the Circuit Court of Knox County at Knoxville.
**Honorable Harold Wimberly, Judge**

**Bruce A. Anderson**,
**Vonda M. Laughlin**,
BUTLER, VINES AND BABB, P.L.L.C., Knoxville, Tennessee
Attorneys for Plaintiffs/Appellants.

**Paul E. Dunn**,
**Dallas T. McRenolds, III**
DUNN, MacDONALD & COLEMAN, P.C., Knoxville, Tennessee
**Janet L. Hogan**, HOGAN & HOGAN, Knoxville, Tennessee
Attorneys for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**WILLIAMS, Sr. J.**: (Concurs)

Plaintiffs John Lee Newton and Victoria Carter Newton appeal the trial court's order granting the motion for summary judgment filed by Defendant/Appellee Denise Tinsley in her individual capacity. We affirm based on our conclusion that, under the facts of this case, Tinsley owed no legal duty to prevent injury to the Newtons.

John Newton was seriously injured when he was shot by Tinsley's husband, Tom Tinsley. Tinsley's relationship with the Newtons began when Tinsley, a licensed real estate agent, sold the Newtons a lot on property in Knox County known as the Long farm. Tinsley acted as the dual agent for both the Newtons and the Longs in the sale of the lot. Tinsley also helped the Longs subdivide and develop the farm property. Tom Tinsley assisted with the construction of a road across the Long farm property to enable property owners to access their lots.

A couple of months after purchasing their lot, the Newtons complained to Tinsley that the road across the farm property was experiencing drainage problems. In response to this complaint, Tinsley asked her husband to make repairs to the road. Tom Tinsley took a Bobcat to the site and attempted to repair the road by laying additional gravel and grading the road. Despite these efforts, the Newtons continued to complain about the drainage problem on the road. A dispute arose between Tom Tinsley and John Newton over the former's efforts to repair the road, and their dispute intensified when the Newtons threatened to file a lawsuit if the problem was not resolved.

On the evening of April 26, 1995, Tinsley returned home from a Codes Administration meeting where she had requested a variance for some unrelated property. When Tinsley informed her husband that the variance had been denied, he became very angry and appeared out of control. Shortly thereafter, Tom Tinsley left the house, armed with a shotgun and a nine-millimeter pistol. Tinsley knew that her husband was being treated for manic depression, and she knew that he recently had threatened to harm both John Newton and another man, a Codes Administration employee.

About five minutes after her husband left the house, Tinsley telephoned the office of his psychiatrist, Kathleen Sales. Dr. Sales was out of the office, but she returned Tinsley's call approximately ten minutes later. During the ensuing telephone conversation, Tinsley expressed concern for her husband's safety and for the safety of two other men, the names, addresses, and

telephone numbers of whom she provided to Dr. Sales. One of the men specifically mentioned by Tinsley was John Newton. As a result of her conversation with Tinsley, Dr. Sales called 911.

Meanwhile, after leaving his house, Tom Tinsley drove the three miles to the Newtons' lot on the Long farm property, where John Newton was working on the family's partially-constructed home. During a brief confrontation, Tom Tinsley shot Newton a total of four or five times and proceeded to beat Newton in the head with the pistol. Tom Tinsley also attempted to shoot Newton's wife and two small sons, who escaped unharmed. After fleeing the scene, Tom Tinsley shot and killed himself.

Although seriously injured, Newton survived the shooting and, along with his wife, filed this lawsuit against Tinsley, both in her individual capacity and in her capacity as administratrix of her husband's estate. Tinsley, acting in her individual capacity, filed a motion for summary judgment contending that, as a matter of law, she owed no duty to control the conduct of her husband or to protect the Newtons from her husband's conduct. The trial court granted the motion, and this appeal by the Newtons followed.[1]

When the material facts regarding a controlling issue of law are undisputed, summary judgment is an appropriate means of deciding that issue. ***Byrd v. Hall***, 847 S.W.2d 208, 214-15 (Tenn. 1993). In this case, the record contains no dispute as to the facts which were material to the issue of whether Tinsley owed a duty to the Newtons.[2] Accordingly, we agree that summary judgment was the appropriate procedure by which to determine this issue.

We begin our analysis with the premise that, although all persons have a duty to use

---

[1] The trial court also entered a $500,000 judgment in favor of the Newtons and against the Estate of Tom Tinsley. This appeal involves only the judgment entered in favor of Tinsley in her individual capacity.

[2] There was some dispute in the testimony as to whether Tom Tinsley specifically mentioned John Newton's name prior to leaving the Tinsleys' house. Tinsley testified that the only name mentioned by her husband on the evening of April 26, 1995, was that of the Codes Administration employee. Dr. Sales contradicted this testimony, stating that Tinsley told her during their telephone conversation that evening that Tom Tinsley also mentioned John Newton's name. In any event, it was undisputed that Tom Tinsley recently had threatened to "go over there and beat [John Newton] up" and that Tinsley was sufficiently concerned for Newton's safety to provide his name, address, and telephone number to Dr. Sales.

reasonable care to refrain from conduct that will foreseeably cause injury to others, as a general rule, one person owes no affirmative duty to protect or warn others endangered by the conduct of a third party. *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993); *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. App. 1992). In explaining this historical reluctance to countenance nonfeasance as a basis of liability, our supreme court stated:

> In determining the existence of a duty, courts have distinguished between action and inaction. Professor Prosser has commented that "the reason for the distinction may be said to lie in the fact that by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs."

*Bradshaw v. Daniel*, 854 S.W.2d at 870 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984)).

To mitigate the harshness of this rule, the courts of this state have carved out exceptions in cases where the defendant stands in some special relationship either to the individual whose conduct threatens to cause harm or to the individual exposed to the harm. *Bradshaw v. Daniel*, 854 S.W.2d at 871; *Nichols v. Atnip*, 844 S.W.2d at 661. Specifically, the courts have adopted section 315 of the *Restatement (Second) of Torts*, which provides that:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Restatement (Second) of Torts* § 315 (1964).

The *Restatement* defines the relationships between the actor and the third person which will require the actor to control the third person's conduct: the relationship between parents

and their minor children; masters and their servants; property owners and their guests;[3] and custodians and persons in their care who demonstrate dangerous propensities. *Restatement (Second) of Torts* §§ 316--319 (1964); *Nichols v. Atnip*, 844 S.W.2d at 662. Similarly, the *Restatement* defines the relationships between the actor and the other which will require the actor to control the conduct of third persons for the protection of the other: the relationship between common carriers and their passengers; innkeepers and their guests; possessors of premises open to the public and their invitees; and custodians and persons in their care who are unable to protect themselves. *Restatement (Second) of Torts* §§ 314A, 320 (1964); *Nichols v. Atnip*, 844 S.W.2d at 662.

Although the foregoing list of recognized relationships is not necessarily an exclusive one, the *Restatement* suggests that the duty to aid or protect another will be imposed only in relationships involving some degree of dependence or mutual dependence. *Restatement (Second) of Torts* § 314A cmt. b (1964). On the other hand, in order for the duty to control a third party's conduct to arise, the actor must have the means and ability to control the third party. *Carroll v. Thomas*, 1988 WL 22833, at *3 (Tenn. App. Mar. 8, 1988), *perm. app. denied* (Tenn. May 23, 1988).

In the present case, we affirm the trial court's order entering summary judgment in favor of Tinsley because the Newtons have articulated no special relationship between either Tinsley and her husband or between Tinsley and the Newtons which would impose a duty upon Tinsley to control her husband's conduct or to protect the Newtons from her husband's conduct. On appeal, the Newtons argue that they had a special relationship with Tinsley because she was the real estate agent who sold them their lot on the Long farm and assisted in developing the farm property. The Newtons additionally argue that Tinsley had a special relationship with her husband because she involved him in the development of the farm property by requesting that he perform roadwork on the property. With the exception of the master-servant relationship alleged in the Newtons' reply brief, however, the special relationships described by the Newtons are not those envisioned by the *Restatement*. The Newtons do not contend that Tinsley was her husband's guardian or custodian,

---

[3]As noted by the court in *Nichols*, this court specifically has declined to adopt the special relationship between private property owners and their guests recognized in section 318 of the *Restatement*. *Nichols v. Atnip*, 844 S.W.2d at 662 (citing *Wilkerson v. Altizer*, 845 S.W.2d 744, 748 (Tenn. App. 1992)).

nor do they contend that Tinsley's relationship with the Newtons was that of custodian, common carrier, innkeeper, or possessor of land open to the public. Moreover, the relationships described by the Newtons do not constitute "special" relationships within the meaning of the *Restatement* because (1) they do not involve any type of dependence or mutual dependence which would impose upon Tinsley a duty to aid or protect the Newtons, and (2) they not involve the means and ability to control which would impose upon Tinsley a duty to control the conduct of her husband.[4]

In their reply brief, the Newtons contend that the master-servant exception of section 317 of the *Restatement* applies in this case. That section provides that:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> (I) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (I) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control.

*Restatement (Second) of Torts* § 317 (1964). We conclude that the master-servant exception found in section 317 does not apply to this case because (1) the undisputed evidence demonstrates that Tom Tinsley was upon the Newtons' premises at the time of the shooting, and not upon Tinsley's premises (or premises upon which Tom Tinsley had a privilege of entry only as Tinsley's servant), and (2) even if Tom Tinsley could be characterized as his wife's servant, the record fails to indicate that Tinsley had the means and/or the ability to control her husband.

---

[4]In *Nichols*, we observed that the family relationship alone, including that of husband and wife, "is not a 'special relation' because it does not necessarily carry with it the capacity or authority to control." *Nichols v. Atnip*, 844 S.W.2d at 662 (citing *Ollice v. Pugh*, 1987 WL 4902, at *4 (Tenn. App. May 27, 1987)).

We additionally reject the Newtons' contention that the evidence creates an issue as to Tinsley's liability under section 302B of the *Restatement*. Section 302B provides that:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

*Restatement (Second) of Torts* § 302B (1964). In their reply brief, the Newtons cite the following illustration to section 302B in support of this theory:

> A is the landlord of an apartment house. He employs B as a janitor, knowing that B is a man of violent and uncontrollable temper, and on past occasions has attacked those who argue with him. C, a tenant of one of the apartments, complains to B of inadequate heat. B becomes furiously angry and attacks C, seriously injuring him. A may be found to be negligent toward C.

*Restatement (Second) of Torts* § 302B cmt. e illus. 9 (1964). The imposition of liability under this section requires that the actor have exposed the other to "a person whom the actor knows or should know to be peculiarly likely to commit intentional misconduct." *Restatement (Second) of Torts* § 302B cmt. e (1964). The record in this case fails to support a finding of liability under section 302B because the evidence indicates that, when she asked her husband to perform roadwork on the Long farm property, Tinsley neither knew nor should have known that her husband was "peculiarly likely to commit intentional misconduct." *Id*. Although Tinsley knew her husband was being treated for depression, the undisputed evidence reveals that Tom Tinsley never committed violent acts toward another prior to April 26, 1995.

As this court has observed, the common-law rule that persons generally have no duty to protect others from harm by third parties, while seemingly harsh, remains the law in this jurisdiction. *Nichols v. Atnip*, 844 S.W.2d at 662. We recognize that this rule has been the subject of criticism by various legal authorities. *See Restatement (Second) of Torts* § 314 cmt. c (1964). In the absence of a special relationship between either Tinsley and her husband or Tinsley and the Newtons, however, we are constrained to hold that Tinsley owed no legal duty to protect or warn the Newtons in this case.

The trial court's order granting Tinsley's motion for summary judgment and dismissing the Newtons' claim against Tinsley in her individual capacity is affirmed. Costs of this appeal are taxed to the Newtons, for which execution may issue if necessary.

_____

FARMER, J.

_____

HIGHERS, J. (Concurs)

_____

WILLIAMS, Sr. J. (Concurs)