RICHARD C. KING, and Wife,    )
KIMBERLY KING,                   )
                                 )    Appeal No.
     Plaintiffs/Appellants,   )    01A01-9505-CV-00210
                                 )
v.                           )
                                 )
W.D. SCHOCK, INC., SOUTH CENTRAL  )    Davidson Circuit
BELL TELEPHONE COMPANY a/k/a    )    No.  93C-1649
BELLSOUTH TELECOMMUNICATIONS,   )
INC., and CHARLES LARUE,       )
                                 )
     Defendants/Appellees,    )
                                 )
NASHVILLE ELECTRIC SERVICE, VIACOM )
CABLEVISION a/k/a VIACOM       )
INTERNATIONAL, INC., RICHARD LARUE,)
CARLOS LEWIS d/b/a CARLOS LEWIS &  )
SON HOME MOVERS, METROPOLITAN    )
NASHVILLE AIRPORT AUTHORITY and   )
THE METROPOLITAN GOVERNMENT OF    )
NASHVILLE AND DAVIDSON COUNTY,   )
ACTING BY AN THROUGH THE ELECTRIC  )
POWER BOARD AND OPERATING UNDER   )
THE NAME "NASHVILLE ELECTRIC     )
SERVICE,"                     )
                                 )
     Defendants.           )

**FILED**

**December 18, 2001**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE FIFTH CIRCUIT COURT OF DAVIDSON COUNTY

THE HONORABLE WALTER C. KURTZ, JUDGE

DAVID I. KOMISAR          SANDRA L. RANDLEMAN
211 Printer's Alley Bldg.   333 Commerce Street, #2101
Suite 400               Nashville, TN 37201-3300
Nashville, TN  37201      ATTORNEY FOR DEFENDANT/APPELLEE
                        BELLSOUTH TELECOMMUNICATIONS, INC.

CASEY E. MORELAND
Metropolitan Courthouse    ROBERT L. ESTES
3rd Floor               Stewart, Estes & Donnell
Nashville, TN  37201      Third National Financial Center
    ATTORNEYS FOR        424 Church Street, 14th Floor
    PLAINTIFFS/APPELLANTS   Nashville, TN 37219-2392
                        ATTORNEY FOR DEFENDANT/APPELLEE
                        W.D. SCHOCK COMPANY, INC.

C. BENTON PATTON
Manier, Herod, Hollabaugh & Smith
2200 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219

CHRISTINA K. BOYER
4016 Farnam St.
Omaha, NE 68127
    ATTORNEYS FOR DEFENDANT/APPELLEE
      CHARLES LARUE

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

## OPINION

This is an appeal by plaintiffs/appellants, Richard and Kimberly King, from the trial court's order granting summary judgment to defendants/appellees, W. D. Schock, Co. ("Schock"), South Central Bell Telephone Co. a/k/a Bell South Telecommunications, Inc. ("Bell South"), and Charles LaRue.

The underlying facts of this case developed around 1989. In or near that year, Metropolitan Nashville Airport Authority ("MNAA") purchased some land along Allen Road as part of a noise abatement program. It then began to sell the houses on the land. Later, the new owners moved the houses to a different location. Pursuant to a contract with MNAA, Schock maintained the land and managed the land sales. Brian Dillingham purchased the house located at 842 Allen Road. Mr. Dillingham hired Charles LaRue to move the house. Mr. LaRue and his employees moved the house around 12 August 1992. Bell South provided telephone services to this area.

On the night of 6 September 1992, Mr. King was riding his motorcycle. At some point in time, he stopped at the Majik Market. Marty Barnes, a Majik Market employee, asked Mr. King to chase down a car because the driver had not paid for his or her gas. Mr. King proceeded east on Allen Road. As he entered the curve near 837 Allen Road, he claims to have seen a jumble of cables in the middle of the right hand lane. Mr. King lost control of his motorcycle and crashed.

After sending out Mr. King, Marty Barnes asked William Pennington, Jr. and his wife, who were also on motorcycles, if they would go look for a man travelling down Allen Road. The couple agreed to help Mr. Barnes. When they arrived at the

2

scene, the accident had already occurred, but neither the police nor an ambulance had arrived.  Mr. Pennington testified that as he approached the scene he ran over a cable in the lying in the road.  He also stated that his wife pulled the cable out of the roadway.  Finally, Mr. Pennington testified that he noticed the cable was hanging from a pole.

Later, Marty Barnes arrived at the scene.  In his deposition, he testified that he ran over a "tangle" of cable or wire as he entered the curve.  He also testified that the cable was lying on the right side of the right-hand lane and that he noticed a wire hanging from a pole.  Finally, Mr Barnes testified that he did not tell any of the investigating officers at the scene about the cable.

Appellants' theory is that someone or something disconnected the drop wire which serviced 842 Allen Road, and this left the wire hanging from the utility pole numbered 09832003. Somehow, appellants contend, the wire got into the roadway.  The night of the accident, Mr. King ran over the wire which became entangled in the bike causing Mr. King to loose control and crash.  Interestingly, Mr. King testified that he did not know if the bike made any contact with the wires.

Appellees, however, argue that Mr. King's recklessness was the proximate cause of the accident.  In support of this theory, they point to Officer Taylor's deposition.  In his deposition, Officer Taylor concluded that the cause of the accident was Mr. King's inability to negotiate the curve.  Further, as to the location of the wire, Officer Taylor testified as follows:

> Q.   Okay. Did you see any evidence out there at the
> scene, I'm talking about physical evidence now, of
> where the motorcycle left the highway or the roadway

and the path it took to wherever it stopped?

A.    Yes, sir.  There is a -- there was a distinct skid mark through the grass across a paved driveway.  Actually, it was more metal marks that it was tire marks.

. . . .

Q.    All right.  Now, did you see some cable?

A.    There is a pole marked there.  I've got it marked by number, 09832003.  That was probably about 15 -- I'd say 10 to 15 feet off the roadway.

Q.    Okay.

A.    There was a cable  coming from that pole, and if I'm not mistaken, it was running east to the pole, laying on the ground.

Q.    Okay.  Was that cable in any way in the path of the motorcycle, whose path you saw, indicated by the gouge marks you talked about earlier?

A.    When I got to the scene, the cable was away from the accident scene.

. . . .

Q.    Could you estimate how many feet it was away from the path of the motorcycle?

. . . .

A.    From the path of the motorcycle, where I've showed it laid down, I would say the cable was three or four feet from that laid down mark.

As a result of the accident, Mr. King suffered serious injuries and was permanently disabled.  He filed a complaint in the Fifth Circuit Court of Davidson County on 3 September 1993.  Initially the only named defendant was Schock.  Later, Mr. and Mrs. King filed an amended complaint naming numerous parties as defendants including Bell South and Mr. LaRue.  Appellants' amended complaint alleged that defendants were negligent with respect to the dangling cable.  At various points in time, each of the defendants filed motions for summary judgment.  Although the court disposed of the motions individually, on 27 February 1995, the trial judge entered a final order dismissing all claims against each of the defendants.  Subsequently, appellants filed this appeal against Schock, Bell South, and Charles LaRue.

4

Appellants only issue on appeal is whether the trial court erred in granting appellees' motions for summary judgment. We are of the opinion that the trial court did not err and that it properly entered judgment in favor of appellees. We discuss our decision as to each appellee below.

## I. Bell South and W. D. Schock Company

Bell South and Schock each filed a motion for summary judgment. Bell South argued that it did not have notice of the downed drop wire and that neither its acts nor its omissions proximately caused appellants' injuries. Schock claimed that summary judgment was appropriate because it did not owe a duty to appellants and, like Bell South, that it did not commit an act or omission which proximately caused the accident. In two separate orders, the trial court granted the motions of each party.

### A. Duty

"No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). The issue of whether a person owes another a duty of care is a question of law for the court to decide. *Id.* Further, the purpose of a summary judgment proceeding "is to resolve controlling issues of law, and that alone." *Bellamy v. Federal Express Co.*, 749 S.W.2d 31, 33 (Tenn. 1988). Because the existence of a duty of care is a legal issue and is an essential element of negligence, a court may grant summary judgment if it

finds that the defendant did not owe a duty of care to the plaintiff. *Doe v. Linder Constr. Co.*, 845 S.W.2d 173, 183 (Tenn. 1992); *see Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 859 (Tenn. 1985) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 37, at 236 (5th ed. 1984)); *Nichols v. Atnip*, 844 S.W.2d 655, 658 (Tenn. App. 1992).

The determination of whether a person owes a duty to another begins with the realization that "all persons have a duty to use reasonable care to refrain from conduct that will foreseeability cause injury to others." *Bradshaw*, 854 S.W.2d at 870. It follows, therefore, that a duty of care does not arise unless the injury is reasonably foreseeable based on all of the circumstances at the time the negligent conduct occurred. *Doe*, 845 S.W.2d at 178. An injury is reasonably foreseeable when "a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *Id.* Finally, "the degree of foreseeability needed to establish a duty of care decreases in proportion to the magnitude of the foreseeable harm." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994).

In this case, appellants argued that Schock had a duty to coordinate the removal of the drop wire from the utility pole and to ensure that it was properly secured. We can not agree with appellants because Mr. King's injuries were not a reasonably foreseeable consequence of Schock's failure to fulfill its duty as defined by appellants. Likewise, we cannot agree with appellants' contention that Bell South had a duty to inspect the Allen Road area for improperly cut drop wires hanging from utility poles.

6

To begin with, it is necessary to determine when the purported negligent act occurred.[1]  On or about 23 July 1992, Mr. Dillingham purchased the home at 842 Allen Road from MNAA.  In August of 1992, Mr. Dillingham entered into a house moving agreement with Mr. LaRue.  Mr. Dillingham testified that he did not request anyone to remove any wires from the house.  In addition, there was testimony that neither Richard LaRue, Ernest LaRue, Charles LaRue, nor any of the other house movers disconnected any wires from the house at 842 Allen Road.  Further, Ernest LaRue testified that there was not a Bell South wire connected to the house when the house movers began to remove the house.  Ms. McClain, who lived on Allen Road,  testified that she had seen the wire hanging from the pole approximately one week prior to the accident.  She further stated that the wire was rolled up like a water hose and placed beside the pole.  Given the above, it is difficult to determine when the wire was cut and when the negligent act, leaving the wire dangling from the pole, occurred.  Assuming that the wire was connected to the house when MNAA sold it to Mr. Dillingham, the best point in time from which to make the determination would be from the date of the sale and thereafter.

It is impossible to say that the injury was a reasonably foreseeable probability on that day or any day thereafter because a reasonable person could not foresee the probability of its occurrence.  **Doe**, 845 S.W.2d at 178.  In order for this accident to have occurred as appellants suggested, an unauthorized individual had to cut the wire or something had to happen to pull the wire down.  Next, someone would have had to roll the wire up and place it next to the pole at least one week before the accident.  Later, that same person or another unidentified

---

[1] During oral argument, appellants stated that "the negligence was in the manner in which that drop wire was left dangling along the pole."

individual would have had to move the wire seventeen feet[2] and place it in the road. Then a person, traveling on a motorcycle at a high rate of speed in pursuit of a gas thief, would have had to come down the road at night and run over the wire. Finally, it would have to be reasonably foreseeable that the wire would somehow get caught in the motorcycle causing the driver to lose control and crash. Even in a situation such as this where the probability of injury was significant, the possibility of these events occurring is simply too remote to impose a duty upon either Bell South or Schock.

A second reason that the injury was not reasonably foreseeable is that neither Bell South nor Schock "reasonably knew or should have known of the probability of an occurrence such as the one which caused the [appellants'] injuries." *Doe*, 845 S.W.2d at 178. There is no evidence in the record demonstrating that Schock knew that there was a probability of an improperly cut drop wire getting into the road. In fact, appellants did not even argue that Schock had the necessary notice.

As to Bell South, however, appellants argued that because Bell South knew or should have known about the relocation project the probability of someone improperly cutting a drop wire was foreseeable. We can not agree. The fact that the house was in a relocation project does not increase the probability that someone would improperly cut the drop wire. While it is true that it increases the need for cutting the wires, it does not increase the likelihood of them being negligently cut and left dangling. Thus, the issue of whether Bell South had notice of the relocation project is irrelevant because knowledge of the project

---

[2] In an affidavit, a Bell South employee testified in that he went to the accident scene and measured the distance between the road and the pole. It was seventeen feet and three inches.

would not have lead to notice that the likelihood of the danger to appellants was probable.

In further support of this position, there was no evidence that Bell South had notice that the drop wire was improperly cut. Bell South did receive requests to terminate telephone services at 835, 836, 837, 840, and 842 Allen Road, but the requests did not include the removal of the drop wires from the houses. In addition, there is no evidence that Bell South received all of these requests at the same location. Bell South has 523 service representatives in five different Tennessee cities. These representatives service customers in Tennessee, Alabama, North Carolina, Georgia, Kentucky, and Mississippi. Finally, no one called to report that a drop wire was dangling from a pole or that someone was tampering with the wires.

Because appellants' injuries were not reasonably foreseeable, neither Schock's nor Bell South's duty of care arose. *Doe*, 845 S.W.2d at 178. Summary judgment is appropriate when an essential element of negligence is missing. In this case that element is the existence of a duty of care. Therefore, the trial court did not err in granting summary judgement as to appellees Schock and Bell South.

B.   Proximate Cause

In order for a plaintiff to prevail in a case based on negligence, the plaintiff must prove that the defendant's act or failure to act breached a duty of care owed to plaintiff and proximately caused plaintiff's injuries. *Bradshaw*, 854 S.W.2d at 869. The Tennessee Supreme Court has explained the concept of proximate cause as follows:

9

> "An injury that is the natural and probable consequence of an act of negligence is actionable.  But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act or omission is not *actionable;* and such act or omission is either the remote cause or no cause whatever of the injury."

*Moody v. Gulf Refining Co.*, 142 Tenn 280, 290, 218 S.W. 817, 819 (1919) (quoting *Kreigh v. Westinghouse, C. K. & Co.*, 152 Fed.120, 122 (1907)).  It is not necessary to establish that every aspect of the injury was foreseeable.  Instead, the plaintiff only need show that the accident in general was foreseeable.  *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991).  In addition, the negligent conduct "must have been a 'substantial factor' in bringing about the harm. . . ."  *Id.*  A party may break the chain of proximate cause by establishing the existence of an unforeseeable, intervening cause of the accident.  *Id.*  The issue of proximate cause is one for the jury.  Nevertheless, a court may rule on the issue when the facts and the inferences drawn from them are such that "all reasonable persons must agree on the proper outcome."  *Id.*

The issues of whether the accident was foreseeable and whether the omissions were substantial factors are irrelevant because there were at least two intervening acts which relieved Schock and Bell South of liability.  One of these acts was Mr. King driving his motorcycle at a high rate of speed at night while pursuing an alleged gas thief.  The other was perpetrated when an unidentified individual moved the wire into the road.  Viewing this factual situation at the point in time when the wire was cut, coiled up, and placed next to the pole, it is apparent that the likelihood that someone would move it onto the road seventeen feet away is unforeseeable.  It is also unforeseeable that a person, other than a police officer, would come down the road on a motorcycle in hot pursuit of another vehicle.

10

Even if one concludes that the intervening acts were foreseeable, Schock's and Bell South's omissions were not the proximate cause of appellants' injuries for a second reason. In order for appellants to establish that Schock's and Bell South's omissions were the proximate causes of the accident, they must prove that the motorcycle came into contact with the wire. The evidence in the record, however, failed to establish this fact. In his deposition, Mr. King testified as follows:

Q.    Do you know for sure that your tires, or any part of the motorcycle, came in contact with the cables?

A.    Am I sure?

Q.    Yes.

A.    No, I couldn't say yes, that they did.

Appellants only other evidence is the affidavit of Mr. Pennington and the deposition of Martin Barnes. Mr. Pennington testified that he and his wife arrived at the accident scene before the police or the ambulance. He claims that he ran over a cable as he drove down Allen Road on his motorcycle. Finally, he stated that his wife pulled the cable out of the road so that no one else would hit it. Mr. Barnes, who was at the accident scene at the same time as the police, also testified that he ran over some wire laying in the main travel lane. This evidence is contradictory and fails to establish that Mr. King's motorcycle touched the wire.

The issue of whether the motorcycle hit the wire is material because it is essential to the determination of proximate cause. *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). Appellants, however, have failed to provide the court with evidence to contradict the testimony of Mr. King that he did not hit the wire. *Id.; Armes v. Hulett*, 843 S.W.2d 427, 429 (Tenn. App. 1992). Thus, there is no genuine issue for trial. Because

11

appellants can not prove contact with the wire, they can not establish proximate cause.  Therefore, the trial court did not err when it granted appellees' motions for summary judgment.

## II.  Charles LaRue

Appellants claim that the trial court erred when it granted LaRue's motion for summary judgment.  This issue is without merit.  As previously stated, summary judgment is appropriate when it is shown that one of the essential elements of negligence is missing.  *Doe*, 845 S.W.2d at 183; *see Lindsey*, 689 S.W.2d at 859 (quoting Prosser , Sec. 37 at 236); *Nichols*, 844 S.W.2d at 658.  A moving party will prevail if it provides the court with uncontradicted evidence of the nonmoving parties' inability to establish an element of negligence.  *Armes*, 843 S.W.2d at 429. In other words, the moving party's evidence must be such that a reasonable juror could not legitimately resolve that fact in favor of one side or the other.  *Byrd*, 847 S.W.2d at 215.

In this case, LaRue provided the trial court with a great deal of evidence indicating that he did not disconnect the wire. The house moving agreement between Dillingham and LaRue did not authorize LaRue to remove any wires or cables from the house. Charles LaRue and all of his employees testified that they did not remove any wires or cables from the house at 842 Allen Road. LaRue also testified that his standard procedure was to call the appropriate utility company whenever he needed a wire or cable removed from a house.  In fact, Ms. McClain testified that LaRue asked her to call NES because he needed the electrical wire disconnected from the house.  Further, Ms. McClain testified that, although she had seen LaRue and his men preparing the house at 842 Allen Road for removal, she had not seen any of the men or

12

LaRue disconnect any wires from any of the houses they moved. This evidence establishes that LaRue did not do anything which could be considered a breach of his duty of care.

Therefore, the next issue is whether appellants provided the trial court with any evidence that LaRue did cut the wire and, thus, breached his duty of care. Appellants contend that the fact that LaRue moved the house produces a reasonable inference that he cut the wire. When reviewing a trial court's ruling on a motion for judgment, this court is to "view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor." *Id.* Without additional evidence, however, this court can not say that moving the house creates a reasonable inference that LaRue cut the wire. The connection is simply too tenuous. Because appellants failed to establish that there is a genuine issue as to the material fact of breach of duty, the trial court correctly determined that summary judgment was appropriate.

Therefore, it follows that the judgment of the trial court is affirmed in all respects and is remanded for any further necessary proceeding. All costs on appeal are taxed to appellants.

_____
SAMUEL L. LEWIS, JUDGE


Concur:


_____
HENRY F. TODD, P.J., M.S.


_____
BEN H. CANTRELL, JUDGE

13