Randy H. DOOLEY and Brenda Y. Dooley, Individually and as parents and next of kin on behalf of Brandon H.B. Dooley, a minor, Plaintiffs–Appellants,

v.

Leon E. EVERETT, M.D., Defendant,

Revco Discount Drug Centers, Inc., and Revco D.S., Inc., Defendants–Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 12, 1990.

Application for Permission to Appeal
Denied by Supreme Court
Feb. 19, 1991.

John A. Day, Kim A. McMillan, Boult, Cummings, Conners & Berry, Nashville, Wayne F. Hairrell, Lawrenceburg, for plaintiffs-appellants.

Thomas C. Binkley, Jeffrey Zager, Trabue, Sturdivant & DeWitt, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

The appeal in this case presents the issue of whether under the facts in the record there is a genuine issue of material fact regarding whether a pharmacist has a duty to warn a customer and/or the customer's physician of the potential interaction between two different prescription drugs

written by the same physician on two different days and which are filled as written by the same pharmacist on different days.

The trial court held there was no duty, sustained defendants' Revco Discount Drug Centers, Inc. and Revco D.S., Inc.'s [1] motion for summary judgment and dismissed plaintiffs' complaint.

The pertinent facts are as follows:

Dr. Leon Everett, a family practice physician in Lawrenceburg, Tennessee, began treating the minor plaintiff Brandon Dooley in June 1985 when Brandon was three years old. Brandon was hospitalized in June 1985 for pneumonia and, during this hospitalization, Dr. Everett prescribed an asthma medication known as Theophylline. In January 1986, Dr. Everett diagnosed Brandon as suffering from asthma and again prescribed Theophylline for Brandon.

Theophylline is a prescription only medication used in the treatment of asthma and has a recommended therapeutic range of ten to twenty micrograms per milliliter. A blood serum level of less than ten micrograms per milliliter is considered of no therapeutic value. Serum levels in excess of twenty micrograms per milliliter present potential toxicity. Revco filled the Theophylline prescriptions prescribed by Dr. Everett at various times between 14 September 1987 and 23 December 1987. Dosages of Theophylline were increased from 150 mgs. twice a day to 200 mgs. three times a day by Dr. Everett.

On 17 December 1987, Dr. Everett prescribed Erythromycin for Brandon at 400 mgs. four times per day for a period of ten days. This prescription was filled by Revco on 17 December 1987. At the time Erythromycin was prescribed for Brandon, he was still taking 200 mgs. of Theophylline three times per day as per Dr. Everett's orders.

On 23 December 1987, Brandon suffered cerebral seizures as the result of toxic levels of Theophylline in his blood.

At the time Erythromycin was prescribed by Dr. Everett and the prescription was dispensed by Revco, the package insert for Erythromycin provided in pertinent part:

Recent data from studies of Erythromycin reveal that its use in patients who are receiving high doses of Theophylline may be associated with an increase of serum Theophylline levels and potential Theophylline toxicity. In case of Theophylline toxicity and/or elevated serum Theophylline levels, the dose of Theophylline should be reduced while the patient is receiving concomitant Erythromycin therapy.

At the time Revco filled the Erythromycin prescription, Revco did not warn or explain the potential for interaction to the plaintiffs. Also, Revco did not alert Dr. Everett of the potential interaction or possible effects of using Erythromycin concurrently with Theophylline.

Dr. Everett was familiar with the potential side effects resulting from the toxic serum levels of Theophylline in the blood. He knew these included nausea, vomiting and seizures.

The pharmacist on duty at the time Brandon's prescription was delivered did not know that Erythromycin could interact with Theophylline. He did not know that this combination of drugs posed a risk of serious injury to Brandon.

In opposition to Revco's motion for summary judgment, plaintiffs filed the affidavit of Roy E. Marcrom. Mr. Marcrom "received a Bachelor of Science Degree on Pharmacy" in 1971 and, in 1972, received a Doctor of Pharmacy Degree from the University of Tennessee. He has practiced pharmacy in Tennessee since his graduation and is presently the owner of Marcrom's Pharmacy in Manchester, Tennessee.

In his affidavit Mr. Marcrom states that "Pharmacy is a profession that requires considerable knowledge about drugs and how they affect the human body;" that "pharmacists recognize that there exists a

---

**1.** Both Revco Discount Drug Centers, Inc. and Revco D.S., Inc., will hereafter be referred to as Revco.

standard of care applicable to the practice of pharmacy in [Tennessee];" that "there are certain duties and responsibilities generally accepted by the members of the pharmacy community;" that the "accepted standard of care of professional practice for the profession of pharmacy as they existed in Lawrenceburg, Tennessee, and similar communities in 1987" included that "pharmacies maintain a patient profile system" and that "the patient profile should be reviewed by the pharmacist prior to filling a new prescription for several purposes" including a determination of whether the new drug prescribed for the patient and presented for filling to the pharmacist interacts with any other drug currently ordered for the patient. He further testified:

> [T]he standard of care also required the pharmacist alerted to the interaction to call the Erythromycin prescriber, alert him or her to the potential interaction, and/or advise the patient or patient's representative of the potential interaction and encourage him or her to (1) have his or her serum Theophylline levels monitored and/or (2) be alert for side effects of Theophylline toxicity. It is difficult to articulate what the standard of care requires of a pharmacist without knowing the exact circumstances under which the prescription for Ery–Ped was presented but, regardless of the circumstances, the pharmacist is required to alert the patient or patient's representative to the potential interaction.

Mr. Marcrom also testified that "there exists and did exist in 1983, 1984, 1985, 1986, and 1987, computer technology which was available to pharmacists to identify drug interactions in general and the Erythromycin and Theophylline interaction in particular."

Revco's motion for summary judgment was made on the sole basis that as a matter of law the pharmacist does not have a duty to warn his customer that there exists a potential drug interaction.

In order for Revco to prevail on its motion for summary judgment, it must establish that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03.

In determining whether or not a genuine issue of fact exists in a summary judgment case, the trial court, and this Court on appeal, must look to all the evidence, take the strongest legitimate view of it in favor of the opponent of the motion and, allowing all reasonable inferences from it in his favor, discard all countervailing evidence. If then there is any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *See Phillips v. Pittsburg Consol. Coal Co.*, 541 S.W.2d 411, 413 (Tenn.1976). Where a dispute exists as to any material fact or where there is merely uncertainty as to whether there may be a dispute, it is the duty of the court to overrule a motion for summary judgment. *Dolan v. Cunningham*, 648 S.W.2d 652 (Tenn.App.1982).

Revco insists that if this Court should find that Revco had a "duty to warn," the Court will be engaging in policy making which is a function of the legislature, rather than the courts. *Still v. Baptist Hosp., Inc.*, 755 S.W.2d 807, 812 (Tenn.App.1988).

We agree that "policy making" is not a legitimate function of the courts. However, we respectfully disagree that this Court would be entering into the realm of policy making if it determines that summary judgment was not appropriate in this case.

> It is axiomatic that three elements are necessary for the existence of a cause of action for negligence: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff which was proximately caused by the defendant's breach of a duty. (citation omitted.) 'A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.'

*Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 858 (Tenn.1985).

"[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do or must not do, is a question of the standard of conduct required to satisfy the duty. The distinction is one of convenience only, and it must be remembered that the two are correlative, and one cannot exist without the other.

W. Keeton, *Prosser and Keeton on the Law of Torts* § 53 (5 ed. 1984).

■ Legal duty means that which the law requires to be done or forborne to a determinate person or to the public at large and a correlative to a right vested in such person or the public at large. *Dabbs v. Tennessee Valley Auth.*, 194 Tenn. 185, 250 S.W.2d 67 (1952). A duty rests on everyone to use due care under the attendant circumstances, and negligence is doing what a reasonable and prudent person would not do under the given circumstances. *Dixon v. Lobenstein*, 175 Tenn. 105, 132 S.W.2d 215 (1939).

■ Duty in the context of a case where negligence is alleged raises the question of whether the defendant is under any obligation required by law for the benefit of the particular plaintiff. 57A Am. Jur.2d *Negligence* §§ 84, 85 (1989). Standard of care refers to what a defendant "must do, or must not do ... to satisfy the duty." *Id.* at § 85.

■ Generally Revco owes its customer a duty to use due care under attendant circumstances. That is, Revco owes a duty to its customer to refrain from negligently doing or failing to do an act which would injure its customer. The pharmacist has a duty to act with due, ordinary, care and diligence in compounding and selling drugs. *Batiste v. American Home Products Corp.*, 32 N.C.App. 1, 8, 231 S.E.2d 269, 273–274 (1977).

■ Whether there is a duty owed by one person to another is a question of law to be decided by the court. However, once a duty is established, the scope of the duty or the standard of care is a question of fact to be decided by the trier of fact.

Our Supreme Court, in *Wood v. Clapp*, 36 Tenn. (4 Sneed) 65 (1856), a case in which a surgeon was sued for alleged malpractice, stated in part as follows:

[A]ny one who assumes to be qualified for the exercise of any profession, art, or vocation, is responsible for any damage which may result to those who employ him from the want of the necessary and proper knowledge, skill, and science which such profession demands. A man who enters upon the legal profession and solicits business, is required to have such an amount of legal learning as will enable him to discharge with reasonable skill and ability the duties incumbent upon him in his profession. If, from the want of such knowledge and skill, or a proper degree of industry, diligence, and attention to the business entrusted to him, his client sustains injury, he is responsible in damages. The same rule applies to a physician. He impliedly contracts with those who employ him that he has such skill, science, and information as will enable him properly and judiciously to perform the duties of his calling. If he should be deficient in these respects, he has violated his contract, and must account, in damages, for any malpractice by which those employ him sustain injury. This is the general rule applicable to all professions and avocations in which men are employed to act for others in any particular department of business requiring skill, art, or science. The law does not, however, require the *highest degree* of skill and science, but only such reasonable degree as will enable the person safely and discreetly to discharge the duties assumed. The failure of a course of treatment is not by any means conclusive of that want of professional skill by the practitioner; such a rule would be harsh and unreasonable in application to any art or profession, and endanger the most faithful and best-informed.

*Id.* at 66–67 (emphasis in original).

■ Professionals are judged according to the standard of care required by their

profession. In *Delmar Vinyards v. Timmons*, 486 S.W.2d 914, 920 (Tenn.App. 1972), the Court stated: "The standard of care applicable to the conduct of audits by public accountants is the same as that applied to doctors, lawyers, architects, engineers, and others furnishing skilled services for compensation and that standard requires reasonable care and competence therein." *See Cleckner v. Dale*, 719 S.W.2d 535 (Tenn.App.1986) (Attorney must exercise the degree of care and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction.); *Truan v. Smith*, 578 S.W.2d 73 (Tenn.1979) (Physicians must exercise reasonable and ordinary care commensurate with his skill and knowledge.).

*Restatement (Second) of Torts*, § 299A (1965) provides:

> Unless he represents that he has a greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

We do not think it is subject to question that the practice of pharmacy is a profession. The Pharmacy Practice Act, in pertinent part, provides as follows:

> (d) The practice of pharmacy in this state is declared a professional practice affecting the public health, safety and welfare and is subject to regulation and control in the public interest and concern that the practice of pharmacy, as defined in this chapter, merit and receive the confidence of the public and that only qualified persons be permitted to practice pharmacy in this state.
>
> (e) As used in this chapter:
>
> . . . .
>
> (6) "Practice of pharmacy" means the practice of that profession concerned with the art and science of preparing, compounding and dispensing of drugs and devices, whether dispensed on the prescription of a medical practitioner or legally dispensed or sold directly to the ultimate consumer, and includes the proper and safe storage and distribution of drugs, the maintenance of proper records therefor, and the responsibility of relating information as required concerning such drugs and medicines and their therapeutic values and uses in the treatment and prevention of disease. The "practice of pharmacy" does not include the operations of a manufacturer or wholesaler if properly licensed as such. . . .

Tenn.Code Ann. § 63–10–101(d) and (e)(6).

■■■ The pharmacist is a professional who has a duty to his customer to exercise the standard of care required by the pharmacy profession in the same or similar communities as the community in which he practices his profession.

There is a disputed issue of fact in the record regarding whether the duty to discover and warn customers of potential drug interactions is included within the general scope of the duties a Tennessee pharmacist owes to its customers.

■■■ We have considered each of the cases cited by Revco and also this Court's opinion in *Laws v. Johnson*, 799 S.W.2d 249 (Tenn.App.1990).[2] None of the cited cases

---

2. In *Laws v. Johnson*, the plaintiff sued several defendants, among them, four pharmacists and the pharmacy for which they worked. He alleged that the pharmacists violated their common law duty by removing the insert from the prescription drug before delivering the drug to him and that this breach of duty resulted in plaintiff having a heart attack. The defendant pharmacists filed a motion for summary judgment to which they attached their affidavits. These affidavits state, *i.e.,* "Package inserts are designed for the purpose of the manufacturers conveying to the prescribing physician the benefit and risk, etc. of the use of the drugs," that the package inserts are commonly removed by the "filling pharmacist" simply because the inserts, as above stated, are designed for the use of the prescribing physician, and not the patient." Each of the affidavits "stated the pharmacists all adhered to the acceptable standard of pharmaceutical care in dispensing the Timoptic to Mr. Laws as the physician ordered and without deviation or departure from such standard." There was no countervailing proof. An essential element of the plaintiff's case was to show that defendants had deviated from the standard of care. Plaintiffs failed to make a showing to establish the existence of this essential element.

deal with the situation where the plaintiff has produced an expert opinion that the pharmacy breached the standard of care owed by the pharmacy to its customer.

We have also considered the "learned intermediary doctrine" which was adopted as an exception to a manufacturer's duty to warn in products liability cases brought under a theory of strict liability. The rationale for the doctrine was stated in *Stone v. Smith, Kline & French Laboratories*, 731 F.2d 1575 (11th Cir.1984), as follows:

> "We cannot quarrel with the general proposition that where *prescription* drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. See Restatement (Second) of Torts, Section 388 (1965). Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a learned intermediary between manufacturer and consumer."

*Id.* at 1579–1580 (quoting *Reyes v. Wyeth Laboratories*, 498 F.2d 1264 at 1276 (5th Cir.1974)) (emphasis in original).

Conceived as an exception to the manufacturer's duty, the doctrine has recently taken a quantum leap and attached to a pharmacist's duty to warn his or her customers under a negligence theory. *See Leesley v. West*, 165 Ill.App.3d 135, 116 Ill.Dec. 136, 518 N.E.2d 758 (1988); *Ingram v. Hoops Drugs, Inc.*, 476 N.E.2d 881 (Ind.App. 4th Dist.1985); *Eldridge v. Eli Lily & Co.*, 138 Ill.App.3d 124, 92 Ill.Dec. 740, 485 N.E.2d 551 (1985).

In each of the foregoing cases the plaintiff argued that there was a duty to warn on the part of the druggist as a matter of law either relying on common law or statutes which the courts found to be inapplicable.

Here the focus is on the pharmacy's duty to its customer. The case does not involve a relationship between the drug manufacturer and the patient or the physician and the patient.

Here, the question is whether the scope of the duty owed by the pharmacist to the customer includes a duty to warn. The fact that the pharmacy owes its customer a duty in dispensing prescription drugs is without question. Revco simply argues that the duty to warn of potential drug interactions is not a part of its duty. The plaintiffs here have introduced expert proof disputing this assertion. Therefore, whether the duty to warn of potential drug interaction is included within the pharmacist's duty to his customer is a disputed issue of fact preventing the granting of summary judgment.

We therefore reverse the judgment of the trial court and remand for a trial on the merits, the collection of costs which are assessed to Revco, and for any further necessary proceedings.

TODD, P.J., and KOCH, J., concur.

When the non-moving party fails to establish the existence of an essential element, there is no genuine issue as to the material facts, "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Moman v. Walden*, 719 S.W.2d 531, 533 (Tenn. App.1986) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).