Mary MARTIN, et al., Plaintiffs–Appellants,

v.

BARGE, WAGGONER, SUMNER AND CANNON, et al., Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Nov. 29, 1994.

Permission to Appeal Denied by Supreme Court Feb. 27, 1995.

David T. Black and C. Edwin Shoemaker, Kizer & Black, Maryville, for plaintiff-appellant, Mary Martin.

John D. Agee, Kingston, for plaintiff-appellant, Patsy Hedrick.

L. Anderson Galyon, III, Kennerly, Montgomery & Finley, Knoxville, for defendant-appellee, Barge, Waggoner, Sumner & Cannon.

Thomas V. White and Todd E. Panther, Tune, Entrekin & White, P.C., Nashville, for amicus curiae.

## OPINION

FRANKS, Judge.

In this action before a jury, plaintiffs called as an expert Dr. Louis Thompson, an engineer who was asked:

Q. Dr. Thompson, do you have an opinion as to whether or not Barge, Waggoner, Sumner & Cannon exercised reasonable care or the ordinary skill of the profession of engineers practicing in the same or similar localities or communities under similar circumstances as you discovered here with regard to the protection of persons lawfully working on the South Oak project?

A. Yes, sir, I do.

The Trial Judge refused to admit the expert's opinion into evidence, but allowed a T.R.A.P. Rule 9 interlocutory appeal, which this Court granted. We now reverse that ruling.

By way of background, two men were killed as a result of a trench collapse on a construction site, and the widows filed this wrongful death action against defendant engineering firm which did the design work on the project. The Trial Court initially granted summary judgment which was subsequently vacated by this Court and the case was remanded for trial.

When Dr. Thompson was called to testify, defense counsel conducted a voir dire examination and objected to Dr. Thompson's competency to testify, and argued that since Dr. Thompson did not practice engineering in Tennessee and was not personally familiar with "local customs", any opinions he might express as to the existence of a national standard of care were really expressions of a standard of care applicable to engineers in Dr. Thompson's home state of Texas, which are not relevant to the standards of care applicable to engineers in Tennessee.

Rule 702 of the Tennessee Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise."

It appears the Trial Court did not question Dr. Thompson's expertise in engineering as applied to the facts of this case, rather, the Trial Court reasoned because the witness did not practice engineering in Tennessee and frankly admitted that he was not familiar with the local practices in East Tennessee, he could not substantially assist the trier of fact in determining whether the defendant had breached the standard of care required of a similarly situated engineer (i.e., an engineer practicing in Tennessee).

Tennessee courts have adopted the "same or similar community" standard of care with respect to professional negligence. *See Dooley v. Everett*, 805 S.W.2d 380 (Tenn.App. 1991) where this Court favorably quoted from the *Restatement of Torts (Second)* § 299A (1965) as follows:

Unless he represents that he has a greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.

The *Dooley* Court said that "once a duty is established, the scope of the duty or the standard of care is a question of fact to be decided by the trier of fact."

This Court in *Underwood v. WaterSlides of Mid–America, Inc., et al.*, 823 S.W.2d 171 (Tenn.App.1991) rejected a strict locality rule for establishing the standard of care for engineers. Defendant attempts to distinguish *Underwood* from this case by arguing the engineering issues involved in that case did not involve the natural conditions of the local

environment. The engineering issues involved in this case it is argued are so intimately tied to the local natural conditions that the engineering methods and techniques required to meet the standard of care could only be accurately assessed and analyzed by those engineers who practice their profession in Tennessee. We cannot agree. The soil composition, slope elevation and other natural conditions will vary from location to location. However, there is no suggestion that an adequately trained engineer cannot analyze any particular combination of natural conditions in a locality other than where he normally practices his profession and design or engineer the requirements of a particular project. In terms analogous to those espoused by the *Underwood* Court, the same engineering techniques and methods required to deal with a particular set of natural conditions will be required regardless of whether that particular set of natural conditions occur in West Tennessee, East Tennessee or anywhere else.

In this case, there is no question as to whether defendant was rendering professional services and had a duty to exercise the skill and knowledge normally possessed by members of that profession or trade in the same or similar communities. Dr. Thompson's testimony was offered to clarify the scope of the duty or applicable standard of care.

Defendant argued, and the Trial Court agreed, that Dr. Thompson was not competent to testify as to the applicable standard of care because he was not familiar with the "local [engineering] customs" practiced in Tennessee, although he had familiarized himself with the licensing rules and regulations for engineers practicing in Tennessee, in addition to conducting a thorough investigation of the facts involved in the case. Dr. Thompson is eminently well qualified[1] to testify regarding the technical aspects of the case. He examined all of the documents and specifications relative to the issues, as well as being present and participating in soil explorations of the site. He also familiarized himself with the State licensing regulations and, based upon his investigation, determined that the standard of care in Tennessee is much the same as elsewhere in the United States. His testimony, as well as whatever proof defendant may offer will, without doubt, substantially assist the jury in determining the applicable standard of care. In the last analysis, the defendant's objections to this evidence go to the weight and not the admissibility of the testimony.

We reverse the judgment of the Trial Court and remand for further proceedings consistent with this opinion.

GODDARD, P.J. (E.S.), and INMAN, Senior Judge, concur.

---

1. The witness is a professional engineer licensed in New Mexico and Texas, a college professor who had long taught in this specialized area of engineering and has widely published in the field.