# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 22, 2015 Session

## TONY HALL v. GAYLORD ENTERTAINMENT COMPANY, ET AL

**Appeal from the Circuit Court for Davidson County**
**No. 11c5177     Amanda Jane McClendon, Judge**

_____

**No. M2014-02221-COA-R3-CV – Filed November 17, 2015**
_____

This is a negligence action. While attending a holiday-themed ice exhibit, the plaintiff slipped and fell at the top of an ice slide attraction that was a feature of the exhibit and sustained injuries to his arm. The plaintiff subsequently filed suit against the company that constructed the ice slide asserting various theories of negligence. After the company filed a motion for summary judgment in which it demonstrated that the plaintiff had not presented any evidence to support his claims, the plaintiff conceded that the company was entitled to summary judgment on all of his claims except those related to negligent design of the ice slide. In support of his assertion that the company breached a standard of care in designing the ice slide, the plaintiff relied solely on American Society of Testing Materials safety standards for children's playground equipment. The trial court determined that because the standards were not applicable to the ice slide, the plaintiff failed to demonstrate how the company was negligent in designing the ice slide. The trial court granted the company's motion for summary judgment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY ARMSTRONG, J., joined.

Mark W. Honeycutt II, Nashville, Tennessee, for the appellant, Tony Hall.

R. Dale Bay, Nashville, Tennessee, for the appellee, International Special Attractions, Ltd.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff/Appellant Tony Hall filed this personal injury lawsuit against Defendant Gaylord Entertainment Company ("Gaylord") and Defendant/Appellee International Special Attractions, Ltd. ("ISA") seeking to recover damages for injuries he allegedly sustained by falling on an ice slide that was featured in the ICE! Exhibit at Gaylord Opryland Resort and Convention Center in Nashville (the "Ice Exhibit"). The Ice Exhibit is Gaylord's annual holiday-themed attraction in which visitors experience a self-contained refrigerated display of ice carvings, sculptures, and three-dimensional ice slides. It is fully-funded by Gaylord, and Gaylord receives all of the revenue it generates. The exhibit attracts approximately 150,000 visitors each year and generates between $600,000 and $800,000 in profits for Gaylord.

In 2006, Gaylord and ISA entered into an agreement outlining the duties and obligations of each party with respect to the 2010 Ice Exhibit. Pursuant to the agreement, Gaylord provided ISA with initial design plans for the Ice Exhibit. Based on Gaylord's creative input, ISA evaluated the feasibility and structural integrity of Gaylord's design and produced the necessary blueprints and engineering drawings. Once Gaylord and ISA finalized the design, ISA constructed the Ice Exhibit according to the design plans and provided limited services to Gaylord during the duration of the Ice Exhibit. For its part, Gaylord was responsible for all operational aspects of the Ice Exhibit, such as promotion, ticket sales, and staffing. Gaylord was also responsible for the construction and placement of all informational, warning, and safety signs, and Gaylord employees were stationed around the Ice Exhibit to monitor guests and ensure their adherence to the posted rules. During the duration of the Ice Exhibit, ISA was required to have an on-site representative conduct a walk-through both prior to opening and at three-hour intervals during each operating day and promptly report any observed safety concerns to Gaylord.

ISA constructed four ice slides that were a part of the 2010 Ice Exhibit. For ease of reference, the ice slides were referred to as "Slide 1," "Slide 2," "Slide 3," and "Slide 4." Ice Exhibit guests accessed each of the ice slides by climbing a flight of stairs and stepping out onto a landing where they waited until it was their turn to slide down. Both the stairs and the landings were covered with red carpet that ended where it abutted the ice at the entrance of the slides. A Gaylord employee was stationed at the top of each landing at all times to assist guests in going down the slides. The slide at issue in this case, Slide 3, ran parallel to, and shared a landing with, Slide 4. As guests reached the top of the landing, the entrances to Slides 3 and 4 were on their right, separated by an ice wall. Slide 3 was approximately 10 to 12 feet high and 36 inches wide. One 26-inch red vertical handrail that goes from the floor to approximately waist high on a person was affixed to each side wall of the entrance to Slide 3

2

and extended back 6 to 8 inches over the red carpet on the landing. A sign at the bottom of the stairs leading to Slides 3 and 4 instructed guests to "[u]se handrails to assist you sitting down on the ice slide."

On December 29, 2010, Tony Hall visited the Ice Exhibit with his girlfriend, and the two decided to slide down Slide 3. Hall's girlfriend went first, and Hall watched from the bottom as she came down the slide without incident. After his girlfriend reached the bottom, Hall got in line to go down the slide. According to his deposition testimony, Hall did not see the rules or warning signs posted at the bottom of the stairs. Hall also testified that when he reached the top of the landing, he did not see a Gaylord employee and that, because his view was obstructed by guests in front of him, he did not see the vertical handrails on either side of the entrance to Slide 3. As Hall stepped from the carpeted landing onto the ice at the top of Slide 3, his feet slipped out from under him and he fell. Hall subsequently had surgery to repair a torn rotator cuff he suffered during the fall.

On December 22, 2011, Hall filed a complaint against Gaylord and ISA in the Davidson County Circuit Court. Hall asserted that his injuries were caused by a defective or dangerous condition on the upper landing of Slide 3. Though Hall did not specify what the defective or dangerous condition on the upper landing of Slide 3 was, he asserted that it caused his injury as a result of Gaylord and ISA's (1) negligent design and construction, (2) negligent operation, (3) negligent failure to warn, and (4) negligent post-construction inspection. Hall sought $500,000 in actual and compensatory damages and requested that the matter be tried before a jury.

On December 6, 2012, Hall filed a motion to amend his complaint and submitted a proposed amended complaint as an attachment to the motion. In addition to the claims asserted in his original complaint, Hall alleged in the proposed amended complaint that Gaylord and ISA's operation of the ice slide was an ultrahazardous activity. As such, Hall alleged that Gaylord and ISA should be strictly liable for his damages. Gaylord and ISA each filed responses in which they asserted that the new ultrahazardous activity allegations failed to state a claim upon which relief could be granted. They argued that the trial court should deny Hall's motion to amend because adding the new allegations would be futile. Following a hearing, the trial court entered an order denying Hall's motion to amend based on its conclusion that the facts alleged were "insufficient to state such a cause of action, do not set forth an activity that could be established as an ultrahazardous activity, and that any amendment allowing same would be futile and should be denied."

Following a period of discovery, Gaylord and ISA filed separate motions for summary judgment along with supporting materials. Regarding Hall's negligent design claim, ISA asserted that it was entitled to judgment as a matter of law because the undisputed facts

3

demonstrated that Slide 3 was designed and constructed in accordance with the requisite standard of professional care. In support of its assertion, ISA relied on the affidavit of its expert, Paul Zellar, a certified amusement ride inspector with over twenty years of experience in providing design, development, and risk management services for leisure facilities. In his affidavit, Zeller stated that he reviewed the design drawings for the ice slides featured at the 2010 Ice Exhibit and opined that "[t]he design of the upper landing of the ice slides for the 2010 ICE Exhibit complies with safety standards in the amusement ride industry." ISA also relied on the affidavit of Kenneth Kaler, the Production Manager for ISA at the 2010 Ice Exhibit. In his affidavit, Kaler stated that he had served as Production Manager for the Ice Exhibit since 2006 and that he and a Gaylord representative inspected the entire Ice Exhibit prior to its public opening each year to ensure its safety and design specifications were correct and met Gaylord's satisfaction. Kaler stated that he and a Gaylord representative inspected the Ice Exhibit prior to its public opening in 2010 and verified that it met the safety and design specifications. Kaler also stated that, after the attraction was opened to the public, a representative from ISA and a representative from Gaylord also inspected the attraction each morning and at three-hour intervals throughout the day. Kaler stated that he and a Gaylord representative completed the requisite inspections on December 29, 2010, and "found at each inspection the slides were in working order, that all railings around the slide were properly secured and all slides appeared to be free from rough, jagged, cracked, or sharp edges." Additionally, ISA pointed out that Hall had not identified or provided evidence of any aspect of the Ice Exhibit that was negligently designed or constructed. In support of its assertion, ISA relied on Hall's failure to identify any negligent actions or specific conduct of ISA in his answer to ISA's interrogatories. ISA also relied on Hall's deposition testimony in which he attributed his fall solely to slipping on the ice. Regarding Hall's claims for negligent operation, maintenance, and failure to warn, ISA asserted that it was entitled to judgment as a matter of law because it was relieved of those duties pursuant to its contract with Gaylord. Finally, regarding Hall's claim for negligent post-construction inspection, ISA asserted that it was entitled to judgment as a matter of law because it inspected and maintained the slide in conformance with the terms of its agreement with Gaylord.

In a memorandum of law filed in response to Gaylord and ISA's motions, Hall conceded that ISA was entitled to summary judgment on his claims for negligent operation, negligent failure to warn, and negligent post-construction inspection. In his response to ISA's statement of undisputed facts, Hall also conceded that ISA constructed Slide 3 in accordance with the design specifications. Hall maintained, however, that ISA was not entitled to summary judgment on his claim for negligent design. That is, Hall acknowledged that he encountered Slide 3 in the state intended by Gaylord and ISA but maintained that there was a defective and dangerous condition inherent in its design. He further asserted that ISA negligently designed Slide 3 because it failed to comply with "the applicable standards

4

and state laws on amusement devices." In support of that assertion, Hall relied on the affidavit of his expert, Edward Pribonic, a professional engineer specializing in project design, ride and equipment design, water parks, and project management for theme parks, family entertainment centers, and other attractions. Pribonic opined that the design of Slide 3 was insufficient because it did not comply with design specification standards of the American Society of Testing Materials ("ASTM"), which, he asserted, applied to amusement devices such as Slide 3. Specifically, Pribonic stated that the design of Slide 3 breached the following applicable standards of Sections 7 and 8 of ASTM F1487-05, titled "Standard Consumer Safety Performance Specification for Playground Equipment for Public Use:"

> 7.5 *Platforms, Landings, Walkways, Ramps, and Similar Transitional Play Surfaces*:
>
> 7.5.5.2 Guardrails shall completely surround the elevated surface except for entrance and exit openings necessary for each event.
>
> (2) Means of ascent and descent that are accessible by openings with horizontal dimensions greater than 15 in. (380 mm) shall have a minimum of one top rail of a guardrail.
>
> 7.5.6.3 Protective barriers shall completely surround the elevated surface except for entrance and exit openings necessary for each event.
>
> (1) The maximum clear opening without a top horizontal guardrail shall be 15 in. (380 mm).
>
> (2) Means of ascent and descent that are accessible by openings with horizontal dimensions greater than 15 in. (380mm) shall have a minimum of one top rail of a guardrail.
>
> 8.5.3 *Slide Chute Entrance*:
>
> 8.5.3.1 Handrails or other means of hand support shall be provided at the slide chute entrance to facilitate the transition from standing to sitting.
>
> 8.5.3.2 At the slide chute entrance, there shall be a means to channel the user into a sitting position (for example, guardrail, hood, and so forth).

Pribonic stated that, at a minimum, the Ice Exhibit design was insufficient because Slide 3 did not have a top horizontal hood or guardrail and there were no horizontal handrails to assist guests in the transition from standing to sitting.

ISA filed a reply to Hall's response to its motion for summary judgment. In its reply, ISA asserted that all of the opinions expressed in Pribonic's affidavit were premised on the classification of Slide 3 as an "amusement device" under Tennessee law. ISA asserted that because Slide 3 was not an amusement device, the ASTM standards he relied on in forming his opinion that its design was insufficient were not applicable. Specifically, ISA cited Tennessee Code Annotated section 68-121-101(3)(B)(i) (2013), which provides that "[a]ny dry slide over twenty feet (20') in height excluding water slides" is an amusement device. ISA asserted that because the undisputed facts demonstrated that Slide 3 was only "ten or twelve feet tall," it did not qualify as an amusement device and the ASTM standards Pribonic cited were therefore not applicable. Alternatively, ISA argued that even if Slide 3 was an amusement device, the particular standards set forth in ASTM F1487-05 were not applicable because they had not been adopted in Tennessee and because they were expressly limited to public playground equipment intended for use by children between the ages of two and twelve.

Hall responded to ISA's contention that the ASTM standards did not apply because Slide 3 was not an amusement device by submitting a second affidavit of Edward Pribonic. In the second affidavit, Pribonic stated that the Ice Exhibit as a whole, as opposed to just Slide 3, was an amusement device under Tennessee law. Pribonic cited Tennessee Code Annotated section 68-121-101(3)(A), which provides that an amusement device "includes, but is not limited to, roller coasters, Ferris wheels, merry-go-rounds, glasshouses, and walk-through dark houses." Pribonic stated that that a "glasshouse" is "an amusement industry term for any indoor environment or enclosure, portable or fixed, through which patrons walk and experience a series of passageways blocked by clear glass or a path enclosed by multiple mirrors to confuse the patron," and that a "walk-through dark house" is "an industry term for any indoor amusement environment, portable or fixed, through which patrons walk and experience a series of scenes or tableaus." Pribonic stated that because the Ice Exhibit was an amusement device based on the definitions of "glasshouse" and "walk-through dark house," the ASTM standards discussed in his first affidavit were applicable to its design.

On May 20, 2014, the trial court issued a memorandum opinion on Gaylord's and ISA's motions for summary judgment. In its opinion, the trial court determined that ISA was entitled to judgment as a matter of law and should be granted summary judgment. In doing so, the trial court noted that Hall's only remaining claim against ISA was for negligent design and that, in support of that claim, Hall relied on Pribonic's expert opinion that the design of Slide 3 failed to meet ASTM standards. The trial court determined, however, that because

6

Slide 3 did not meet the statutory definition of an amusement device, the ASTM standards Pribonic cited were not applicable to it. The trial court concluded:

> All of the standards that Mr. Pribonic submits ISA violated are ASTM standards, which are not applicable if the slide is not an "amusement device." Other than citing inapplicable standards, Mr. Hall has not demonstrated how ISA was negligent in designing the slide or handrails. Thus, a grant of summary judgment in favor of ISA is proper.

As to Gaylord, the trial court determined that summary judgment was not appropriate because reasonable minds could conclude that Gaylord was negligent in failing to warn or instruct Hall prior to the fall. The trial court acknowledged that Hall's fault might be equal to or greater than Gaylord's but concluded that the reasonableness of his actions was a question of fact that should be submitted to a jury.

Following the trial court's denial of Gaylord's motion for summary judgment, Hall and Gaylord entered a settlement agreement, and Hall's claims against Gaylord were dismissed with prejudice. Hall filed a timely notice of appeal from the trial court's grant of summary judgment to ISA.

### ISSUES

Hall raises the following issues on appeal, slightly restated:

1. Whether the trial court erred in granting summary judgment to ISA on Hall's claim for negligent design.

2. Whether the trial court erred in denying Hall's motion to amend his complaint.

### STANDARD OF REVIEW

We review the trial court's ruling on a motion for summary judgment de novo, with no presumption of correctness. *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we must make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013). Summary judgment is appropriate when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P.

7

56.04. The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578 (Tenn. Ct. App. 2014) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). "If the moving party makes a properly supported motion for summary judgment, the burden of production shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact requiring trial." *Id.* (citing *Byrd*, 847 S.W.2d at 215).

When the moving party does not bear the burden of proof at trial, the moving party may make the required showing and shift the burden of production either "(1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, __ S.W.3d __, No. W2013-00804-SC-R11-CV, at *22 (Tenn. Oct. 26, 2015). However, "a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis."[1] *Id.* Rule 56.03 requires that the moving party support its motion with "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record. *Id.* If the moving party fails to meet its initial burden of production, the nonmoving party's burden is not triggered, and the court should dismiss the motion for summary judgment.

---

[1] With regard the burden applicable to a moving party seeking to demonstrate that the nonmoving party's evidence at the summary judgment stage is insufficient to establish its claim or defense, the Tennessee Supreme Court quoted the following language from Justice Brennan's dissenting opinion in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986):

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a "burden" of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. *If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.* Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.

*Rye*, No. W2013-00804-SC-R11-CV, at *16 (alteration in original) (quoting *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting) (citations omitted)).

*Town of Crossville Hous. Auth.*, 465 S.W.3d at 578-79 (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008)).

If the moving party does satisfy its initial burden of production, "the nonmoving party 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Rye*, __ S.W.3d __, No. W2013-00804-SC-R11-CV, at *22 (quoting Tenn. R. Civ. P. 56.06). The nonmoving party must demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in favor of the nonmoving party. *Id.* If adequate time for discovery has been provided and the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial, then the motion for summary judgment should be granted. *Id.* Thus, even where the determinative issue is ordinarily a question of fact for the jury, summary judgment is still appropriate if the evidence is uncontroverted and the facts and inferences to be drawn therefrom make it clear that reasonable persons must agree on the proper outcome or draw only one conclusion. *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998).

We review the trial court's denial of a motion to amend using an abuse of discretion standard while keeping in mind the instruction of Rule 15.01 of the Tennessee Rules of Civil Procedure that "leave [to amend a pleading] shall be freely given when justice so requires." *Hardcastle v. Harris*, 170 S.W.3d 67, 80-81 (Tenn. Ct. App. 2004) (citing *Branch v. Warren*, 527 S.W.2d 89, 91-92 (Tenn. 1975)).

### DISCUSSION

### *ISA's Motion for Summary Judgment*

Of the claims Hall asserted in his complaint, the sole claim at issue in this appeal is his claim against ISA for the negligent design of Slide 3. The essential elements of a negligent design claim are the same as the elements of a general negligence claim. *See Atkins v. State*, No. E2003-01255-COA-R3-CV, 2004 WL 787166, at *5 (Tenn. Ct. App. Apr. 14, 2004). To prevail on a negligence claim, a plaintiff must prove: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant falling below the applicable standard of care amounting to a breach of that duty, (3) an injury or loss, (4) causation in fact, and (5) proximate or legal cause. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).

In its motion for summary judgment, ISA affirmatively showed that there was no evidence in the record to support a judgment for Hall on his negligent design claim. It did so

by reviewing Hall's deposition testimony and his answers to interrogatories. In particular, ISA noted the following answer from its first set of interrogatories:

24. Identify and describe in detail any and all action(s) or specific conduct of ISA that you allege were negligent as stated in your Complaint.

RESPONSE:

Attendant was not paying attention and back was turned to slide. No directions or instructions were given.

It is undisputed that Gaylord was responsible for all operational aspects of the Ice Exhibit, including hiring staff to monitor the safety of guests, and that ISA was not responsible for training Gaylord employees on safe operation of the slides. Clearly, Hall's assertion that the Gaylord attendant failed to instruct him on appropriate use of the slide has no bearing on whether ISA negligently designed Slide 3. By demonstrating that the sole assertion of negligence against ISA in Hall's answers to interrogatories was not relevant to his negligent design claim, ISA met its initial burden of production on summary judgment. Thus, the burden shifted to Hall to demonstrate the existence of specific facts in the record that could lead a rational trier of fact to find in his favor on the negligent design claim.

In response to ISA's motion for summary judgment, Hall asserted that Slide 3 was negligently designed because it lacked a top horizontal hood or guardrail or horizontal handrails over its entrance. In support of that assertion, Hall submitted the affidavit of Edward Pribonic. Pribonic stated in his affidavit that Slide 3's insufficient handrails violated the standards set forth in ASTM F1487-05, titled "Standard Consumer Safety Performance Specification for Playground Equipment for Public Use." Pribonic did not cite any other standards, rules, or regulations in support of his assertion that Slide 3 was negligently designed.

In light of the directive in Tennessee Code Annotated section 68-121-122(a)(1) that the operator of an amusement device annually obtain written documentation from a qualified inspector that the amusement device meets ASTM standards, the parties expend a great deal of effort arguing whether Slide 3 is an amusement device as that term is defined by Tennessee Code Annotated section 68-121-101(3). Hall argues that because either Slide 3, or the Ice Exhibit as a whole, was an amusement device, ISA was required to design it in compliance with ASTM standards; ISA argues that because neither was an amusement device, the ASTM standards did not apply. We do not think it necessary to resolve this particular dispute because, regardless of whether ISA was required to comply with ASTM standards in designing Slide 3, the particular ASTM sections Pribonic relied on to

10

demonstrate that ISA's design violated a standard of care clearly do not apply. The only sections Pribonic cited to demonstrate that ISA's design of Slide 3 was negligent or defective are found in ASTM F1487-05. The title of ASTM F1487-05, "Standard Consumer Safety Performance Specification for Playground Equipment for Public Use," plainly indicates that it is applicable to playground equipment, not ice slides. Moreover, although ASTM F1487-05 is not included in the record on appeal, it is clear from the parties' filings that the scope of the standards is limited to public playground equipment for children.[2] Because the ASTM F1487-05 standards Pribonic relied on to assert that ISA negligently designed Slide 3 are not applicable, there is no evidence in the record that ISA breached an applicable standard of care in designing Slide 3.

Once ISA met its summary judgment burden and shifted the burden of production back to Hall, Hall was required to present some evidence from which a rational trier of fact could find in his favor. *See Rye*, __ S.W.3d __, No. W2013-00804-SC-R11-CV, at *22 (quoting Tenn. R. Civ. P. 56.06). Hall's reliance on inapplicable standards to assert that ISA negligently designed Slide 3 is insufficient to meet that burden. In a negligent design case, the plaintiff asserts that the alleged defect or negligence is inherent in the property's design. However, the design does not have to be perfect or incapable of causing injury. *See Fulton v. Pfizer Hosp. Prods. Grp., Inc.*, 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993). The plaintiff cannot demonstrate that the defendant departed from the applicable standard of care merely by showing that an alternative design would have averted the injury. *See Kerley v. Stanley Works*, 553 S.W.2d 80, 84 (Tenn. Ct. App. 1977) (quoting 72 C.J.S. *Products Liability* § 21). The plaintiff must present some evidence of the standard of care applicable to members of that profession so that the jury will have some understanding of whether the defendant's design negligently deviated from it. *See Dooley v. Everett*, 805 S.W.2d 380, 385 (Tenn. Ct. App. 1990) (quoting RESTATEMENT (SECOND) OF TORTS § 299A (1965) ("[O]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.")). Hall failed to present any evidence that ISA breached an applicable standard of care in its design of Slide 3 despite having adequate time to do so. Accordingly, he failed to meet his burden as the nonmoving party on summary judgment, and ISA was entitled to judgment as a matter of law on the negligent design claim.

---

[2] As ISA pointed out in its summary judgment motion and appellate brief, in Section 1 of ASTM F1487-05, titled "Scope," subsection 1.2 states: "The range of users encompassed by this consumer safety performance specification is the 5th percentile 2-year-old through the 95th percentile 12-year-old." Subsection 1.3 of that section, which Pribonic read in his deposition, states: "Home playground equipment, amusement rides, sports equipment, fitness equipment intended for users over the age of 12, public use play equipment for children 6 months to 24 months, and soft contained play equipment are not included in this specification."

Hall presents several other arguments in support of his negligence claim against ISA. For instance, Hall asserts that ISA breached a contractual duty to perform safety reviews of the Ice Exhibit. However, in response to ISA's motion for summary judgment, Hall expressly conceded to the trial court that ISA was entitled to judgment as a matter of law on his negligent post-construction inspection claim. Additionally, Hall contends that ISA breached a contractual duty to Gaylord because it was not a licensed contractor. Without addressing whether ISA was required to be licensed to construct the Ice Exhibit, we reject this argument as it has no bearing on whether ISA's design of the Ice Exhibit was negligent.

### *Hall's Motion to Amend*

Finally, we address Hall's contention that the trial court abused its discretion in denying his motion to amend his complaint to add the allegation that Gaylord and ISA were strictly liable for his injuries because the Ice Exhibit was an ultrahazardous activity. Hall's motion to amend was filed pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure, which provides that once a responsive pleading is filed or the time for amendment has expired, a party may amend its pleadings "only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires." Though the trial court's decision whether to permit an amendment is discretionary, courts have construed Rule 15.01's instruction that "leave shall be freely given when justice so requires" as substantially lessening the trial court's discretion to deny a requested amendment. *Hardcastle v. Harris*, 170 S.W.3d 67, 80-81 (Tenn. Ct. App. 2004) (citations omitted). Nevertheless, courts have identified a number of circumstances that may warrant denying a motion to amend a pleading:

> These circumstances include: (1) undue delay in seeking the amendment, (2) lack of notice to the opposing party, (3) bad faith or dilatory motive of the moving party, (4) repeated failure by the moving party to cure deficiencies in earlier amendments, (5) futility of the proposed amendment, and (6) undue prejudice to the opposing party.

*Id*. at 81 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Gardiner v. Word*, 731 S.W.2d 889, 891-92 (Tenn. 1987)). Here, the trial court determined that because the facts alleged were insufficient to set forth any activity that could be considered an ultrahazardous activity, the amendment was futile. Thus, the trial court denied the motion to amend.

In his brief, Hall relies solely on the language of Rule 15.01 that leave to amend "shall be freely given" to argue that the trial court abused its discretion in denying his motion to amend. He does not make any argument to support the underlying allegation of the amended complaint that the Ice Exhibit was an ultrahazardous activity. The absence of such an

argument is telling and is essentially a concession that such an amendment would be futile. In any event, Tennessee courts "have traditionally classified ultrahazardous activities as those presenting an abnormally dangerous risk of injury to persons or their property, including the carrying out of blasting operations, the storage of explosives or harmful chemicals, and the harboring of wild animals." *Leatherwood v. Wadley*, 121 S.W.3d 682, 699 (Tenn. Ct. App. 2003). The Ice Exhibit at issue here clearly does not present the same "abnormal risk of injury" as those activities. We agree with the trial court's determination that Hall's amended complaint would have been futile. As such, we conclude that the trial court did not abuse its discretion in denying his motion to amend.

## CONCLUSION

In light of the foregoing, we affirm the trial court's grant of ISA's motion for summary judgment and remand for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellant, Tony Hall, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE