# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 18, 2016 Session

## ERIN ALFORD FULLER v. ROGER DARNELL FULLER

**Appeal from the Chancery Court for Bradley County**
**No. 2014-CV-272     Jerri S. Bryant, Chancellor**

---

### No. E2016-00243-COA-R3-CV-FILED-DECEMBER 21, 2016

---

This appeal stems from a divorce action involving, *inter alia*, issues of proper valuation of a marital asset, child support, and alimony. The trial court found that the "trail" income from the father's financial planning business was a divisible marital asset, valuing it according to the evidence presented. The trial court set child support and alimony based on its determination of the father's income as an average of the prior two years' gross revenues from his business. The father has appealed. We determine that the trial court properly classified and valued the father's trail income from his business. We also determine, however, that the trial court erred by including in the father's income, for child support and alimony purposes, the amount of the trail income distributed as a marital asset. We vacate the trial court's determination regarding the amount of child support and alimony to be paid by the father. We remand this matter for a proper determination regarding the father's income, as well as an appropriate calculation of child support and determination of alimony in favor of the mother resulting therefrom. We determine the father's issue regarding the allocation of days in the permanent parenting plan to be moot. We affirm the trial court's judgment in all other respects. We decline to award attorney's fees on appeal to either party.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Joshua H. Jenne, Cleveland, Tennessee, for the appellant, Roger Darnell Fuller.

James F. Logan, Jr., Cleveland, Tennessee, for the appellee, Erin Alford Fuller.

# OPINION

## I. Factual and Procedural Background

The parties, Erin Alford Fuller ("Mother") and Roger Darnell Fuller ("Father"), wed on November 12, 1988. Following twenty-six years of marriage, Mother filed for divorce on December 4, 2014, in Bradley County Chancery Court ("trial court"). Two children were born of the marriage: a daughter, R.F., who had attained the age of majority by the time of trial, and a son, K.F., who was seventeen years of age at that time. The trial court conducted a bench trial in this matter over the course of two non-consecutive days on November 18, 2015, and December 3, 2015.

The proof demonstrated that both Mother and Father worked outside the home during the marriage. Mother testified that she graduated from "X-ray school" in 1992. She was employed for several years as an X-ray technician, earning a maximum of approximately $27 per hour. Mother received her highest income in that profession in 2011, when she earned nearly $50,000. Due to her concerns regarding future job stability, Mother determined that she desired to pursue a career as a registered nurse. She accordingly attended and completed nursing school, passing her board examination on June 19, 2015. At the time of trial, Mother was working full time as a registered nurse, earning $22 per hour. Mother testified that she believed her earning potential as a nurse would increase in the future.

Father worked in the field of petroleum engineering during the early years of the marriage, with his highest income in that industry reaching approximately $100,000 per year. When the parties moved to Tennessee in 2001, Father completed coursework and passed an examination to become a certified financial planner. Thereafter, Father worked for Morgan Stanley for two years before deciding to strike out on his own. Father testified that he was currently employed in his own financial planning practice, Legacy Investments ("Legacy"), which is a sole proprietorship. Legacy had no employees, staff, or partners. According to Father, he made no initial investment to start Legacy other than to purchase a desk and a computer. Father indicated that his practice was affiliated with a broker dealer, LPL Financial.

Father further explained that he typically receives two types of income from his employment. First, Father earns direct commissions from the sale of financial products. Second, he earns resulting income from financial products that he has previously sold and continues to manage, commonly referred to as "trail" income. According to Father, the trail income he receives from funds and accounts managed for clients constitutes the majority of his income. For example, in 2014, Father's total revenue from Legacy was

$270,000, which was comprised of $50,000 in direct commissions and $220,000 in trail income.

Since 2006, Father had operated Legacy from a commercial office building on Ocoee Street. The parties purchased the office building for $316,000 and acquired the title as tenants by the entirety. Thereafter, Legacy paid rent to Father and Mother in the amount of $3,000 per month for the use of office space in the building. Mother and Father also received rental income from office space leased by another tenant.

The parties' son was primarily residing with Mother in the former marital residence at the time of trial. By agreement, the parties had been allowing K.F. to choose the parent with whom he wished to spend the night. While Mother related that K.F. spent one or two nights per week with Father, Father likewise explained that K.F. spent "a couple" of nights per week with him. At the conclusion of trial, Mother's counsel stated that the parties had no dispute regarding the time K.F. spent with Father annually, characterizing it as "approximately a hundred days."

Following the bench trial, the trial court entered a final judgment of divorce on January 7, 2016. Concerning real estate, the court awarded Mother ownership of the marital residence and awarded Father the office building on Ocoee Street. Following its equitable division of other marital assets and debts, the court determined that Father's trail income generated by his ongoing management of his clients' accounts was also a divisible marital asset separate and apart from any goodwill of the business. The court valued this asset at $400,000, awarding Mother a judgment for one-half of that amount. The court ordered that Father pay Mother $2,000 per month until such judgment was paid.

The trial court determined that Mother should be the primary residential parent for K.F. The court also entered a permanent parenting plan order, which provided that Father would enjoy co-parenting time with K.F. 80 days per year. The trial court calculated Father's income based on the average of his past two years' revenues and set child support according to the guidelines. Finally, the trial court awarded Mother $1,500 per month as alimony *in futuro* based upon the income disparity between the parties, Mother's need, and Father's ability to pay. Father timely appealed.

II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1.    Whether the trial court erred in its determination that Father's trail

income from Legacy was a marital asset subject to equitable division and in the calculation of the value placed thereon.

2.      Whether the trial court erred by awarding Father co-parenting time with K.F. of 80 days per year.

3.      Whether the trial court erred in its calculation of Father's income for the purpose of establishing the proper child support amount.

4.      Whether the trial court erred by awarding to Mother alimony *in futuro* in the amount of $1,500 per month.

5.      Whether Father should receive an award of attorney's fees on appeal.

Mother presents the following additional issue:

6.      Whether Mother should receive an award of attorney's fees on appeal.

III.  Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of appellate review as follows:

This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial

4

court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Further, as this Court has previously held:

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted) (emphasis in original). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a

trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson* [*v. SAIA, Inc.*], 318 S.W.3d [328,] 335 [(Tenn. 2010)] (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

This Court has described the proper standard of review for child support determinations as follows:

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

* * *

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189,

193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

## IV. Classification and Valuation of Sole Proprietorship

Father asserts that the trial court erred in classifying his sole proprietorship, Legacy Investments, as a marital asset subject to equitable division. According to Father, the business owns no real estate, furniture, or any tangible assets of value. Furthermore, Father asserts that the business depends solely on his efforts to generate income. Father thereby argues that the business has no value aside from goodwill, noting that this Court has repeatedly held that professional goodwill in a sole proprietorship is an intangible asset that is not divisible as marital property upon divorce because it is personal to the proprietor. *See, e.g., Hartline v. Hartline,* No. E2012-02593-COA-R3-CV, 2014 WL 103801, at *13 (Tenn. Ct. App. Jan. 13, 2014); *Eberting v. Eberting*, No. E2010-02471-COA-R3-CV, 2012 WL 605512, at *19 (Tenn. Ct. App. Feb. 27, 2012). Mother contends that the trial court properly valued the trail income from the business as a marital asset, upon determining that the trail income constituted an asset separate from goodwill.

"Goodwill" in the context of business valuation has been defined as "a reasonable expectation of [a business's] continued profitable operation." *See T.H. Eng'g & Mfg., Inc. v. Mussard*, No. E2001-02406-COA-R3-CV, 2002 WL 1034029, at *2 (Tenn. Ct. App. May 23, 2002). As this Court recognized with regard to valuation of goodwill:

7

Many factors are involved; the name of the firm, its reputation for doing business, the location, the number and character of its customers, the former success of the business, and many other elements which would be advantageous in the operation of the business.

*Id.* However, this Court has also previously recognized:

[I]t is well settled under Tennessee law that professional goodwill is not a marital asset that can be divided in a divorce proceeding. *See Smith v. Smith,* 709 S.W.2d 588, 592 (Tenn. Ct. App. 1985). As this Court has recently explained:

The basic rationale . . . in the cases disallowing goodwill as a component of the estate in valuing a professional practice results from the inequity in compelling a professional practitioner to pay a spouse a share of an intangible asset at a judicially determined value that could not be realized by a sale or another method of liquidating value.

*Eberting v. Eberting,* No. E2010-02471-COA-R3-CV, 2012 WL 605512 (Tenn. Ct. App. Feb. 27, 2012) (citing *Smith,* 709 S.W.2d at 591-92).

*Hartline*, 2014 WL 103801, at *10-11.

In the case at bar, Mother contends that the trail income was not comprised of goodwill because (1) the evidence demonstrates that Father's trail income was sellable and/or assignable and (2) a valuation methodology for sale of trail income is established in the industry. As Mother points out, Father admitted that his trail income for 2014 was approximately $220,000 and that such trail income could be sold for two times its annual value if, for example, Father became disabled or needed immediate income. Furthermore, the parties stipulated that Ken Jones, a LPL financial planner with thirty-six years of industry experience, would testify that he was "familiar with the recognized guidelines in the trade for valuing the sale of [a financial planning practice], and that guideline is two times a year's trail, plus . . . one times the [direct] commission." Mother thus posits that the trial court properly determined such trail income to be different and separate from professional goodwill, as that concept was defined in the above-mentioned cases, because the testimony of both Father and Mr. Jones established that the trail income could be sold or assigned pursuant to a recognized method of valuation. We agree.

As this Court has previously explained with regard to goodwill:

> The concept of professional good will evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its good will consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. <u>It cannot be separately sold or pledged by the individual owners</u>.

*Smith v. Smith*, 709 S.W.2d 588, 591-92 (Tenn. Ct. App. 1985) (quoting *Holbrook v. Holbrook*, 309 N.W.2d 343 (Wis. Ct. App. 1981)) (emphasis added). By contrast, the trail income under review in the present case could be sold or assigned by Father, as he acknowledged. According to Father, a recognized methodology exists for valuing a financial planning practice if it were to be sold, which is one times the annual value of income due to direct commissions plus two times the annual value of trail income. Father testified that his clients were not mandated to keep their accounts with whomever might purchase his practice, however. Such a sale would therefore usually require that the sale price be paid out over a period of time in order to insure client retention.

Father also explained that in the event of his death or disability, he could assign his trail income to another financial planner in order to maintain an income stream for himself or his family. According to Father, this type of transaction would normally require an agreement with the assignee that Father or his family would be paid a percentage of the ongoing trail income. Mr. Jones confirmed Father's testimony regarding the valuation methodology for the sale of a financial planning practice, stating that the "guideline is two times a year's trail, plus . . . one times the [direct] commission."

Inasmuch as the undisputed evidence demonstrated that Father's trail income could be sold or assigned and that there exists a recognized methodology within the industry for valuing such trail income as sellable property, we conclude that the trial court properly determined Father's trail income to be a divisible marital asset. In contrast to professional goodwill, Father's trail income could be sold separately. *See Smith,* 709 S.W.2d at 591-92. We therefore determine this to be a controlling factor, distinguishing its nature as an asset from the concept of goodwill. Furthermore, the fact that Father could assign his trail income for value upon his disability or death also supports the conclusion that such income constitutes a divisible marital asset. *See, e.g., Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995) (holding that income payable to the husband, an insurance agent, upon his death, based on the value of his customers' insurance

policies "on the books" of his agency, was a marital asset subject to division). We therefore affirm the trial court's determination in this regard.

We also affirm the trial court's valuation of this asset. Both Father and Mr. Jones testified that the recognized methodology for valuing the trail income upon its sale would be to assign it a value of twice its annual amount. The court adopted this valuation, valuing the trail income at $400,000. As this Court has previously explained regarding review of the valuation of a marital asset:

> The value of marital property is a fact question. Thus, a trial court's decision with regard to the value of a marital asset will be given great weight on appeal. In accordance with Tenn. R. App. P. 13(d), the trial court's decisions with regard to the valuation and distribution of marital property will be presumed to be correct unless the evidence preponderates otherwise.

> The value of a marital asset is determined by considering all relevant evidence regarding value. The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted.

*Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (internal citations omitted). The trial court herein properly valued Father's trail income at two times its annual amount in accordance with the evidence presented regarding value. Because the court's assigned value was within the range of the evidence submitted, we affirm the court's classification and valuation of this asset.

## V. Permanent Parenting Plan

Father argues that in the permanent parenting plan order ("PPP"), the trial court erroneously awarded Father only 80 days per year of co-parenting time with K.F. According to Father, the parties agreed prior to trial that K.F. could decide where and with whom he wished to spend each night, inasmuch as K.F. possessed a vehicle and was able to drive from place to place. At trial, Mother testified that K.F. had been spending one to two nights per week with Father at a maximum. Father similarly indicated that K.F. typically spent a "couple" of nights per week with him. Father contends, however, that Mother's counsel stipulated that K.F. spent approximately 100 days per year with Father. Father thereby asserts that the trial court provided no explanation for its allegedly erroneous determination that 80 nights per year would be an appropriate amount of co-parenting time for Father.

We note that both the complaint and the PPP adopted by the trial court list K.F.'s date of birth as November 4, 1998. Therefore, K.F. has reached the age of majority during the pendency of this appeal and is no longer required to abide by the co-parenting schedule contained in the PPP. *See Boyer v. Heimermann*, 238 S.W.3d 249, 258 (Tenn. Ct. App. 2007). As explained in *Boyer*:

> [P]ersons who are eighteen years of age have the same rights, duties, and responsibilities as persons who are twenty-one years of age. Tenn. Code Ann. § 1-3-113(a) (2003). This statute "completely emancipated those over eighteen years of age from the control of their parents." *Nichols v. Atnip* 844 S.W.2d 655, 659 (Tenn. Ct. App. 1992). Thus, a custody or visitation arrangement is no longer binding on children once they become eighteen. *See Stephenson v. West,* No. W1998-00668-COA-R3-CV, 2000 WL 52899, at *3 n. 1 (Tenn. Ct. App. Jan. 13, 2000) (No Tenn. R. App. P. 11 application filed); *Brewer v. Brewer,* No. 01A01-9710-CH-00611, 1999 WL 355906, at *2-3 (Tenn. Ct. App. June 4, 1999) (No Tenn. R. App. P. 11 application filed).

*Id.* Inasmuch as K.F. is no longer subject to the parties' PPP, we determine that Father's issue regarding the allocation of days is now moot. *See Colley v. Colley*, No. M2014-02495-COA-R3-CV, 2016 WL 3633376, at *13 (Tenn. Ct. App. June 28, 2016).[1]

## VI. Father's Income and Child Support

Father also asserts that the trial court erred in determining the amount of his income for the purpose of setting child support. According to Father, the trial court failed to deduct the "ordinary and reasonable expenses of self-employment necessary to produce income" pursuant to the Tennessee Child Support Guidelines. *See* Tenn. Comp. R. & Regs. 1040-2-4-.04(3)(a)(3). Father appears to be correct because the trial court's only finding with regard to Father's income was that he "has income over the last two years of approximately two hundred thousand dollars, even though his summary exhibit on Exhibit 5 shows less than that." The trial court utilized the annual income amount of $200,000 when calculating Father's child support obligation on the child support worksheet. The parties' tax records demonstrate that an average of $200,000 for the two years prior to trial would be nearest to the gross revenue of Legacy without any deduction

---

[1] To the extent that the number of days spent with Father affects Father's child support obligation, we note that the trial court may make a determination regarding the actual number of days K.F. has spent with each parent when calculating child support upon remand. *See Hibbens v. Rue*, No. E2014-00829-COA-R3-CV, 2015 WL 3643421, at *7 (Tenn. Ct. App. June 12, 2015) ("[T]he trial court is instructed to enter the actual number of annual days of co-parenting time exercised by Husband, rather than the number of days allowed under the permanent parenting plan, when recalculating the child support award . . . ."). The issue of child support is addressed fully in the following section of this Opinion.

of ordinary and reasonable expenses as required by the guidelines.

We also note another question concerning the trial court's determination of Father's income. In basing Father's income amount on the total revenue from Legacy, the court appears to have included the trail income that was also divided as a marital asset. As Tennessee Code Annotated § 36-4-121(b)(1)(E) (Supp. 2016) provides:

> Property shall be considered marital property as defined by this subsection (b) for the sole purpose of dividing assets upon divorce or legal separation and for no other purpose; and <u>assets distributed as marital property will not be considered as income for child support or alimony purposes, except to the extent the asset will create additional income after the division</u> . . . .

Ergo, the trail income distributed as marital property should not be considered as income for child support purposes. For these reasons, we conclude that the trial court's determination regarding Father's income and his resultant child support obligation must be vacated.

We accordingly remand this matter to the trial court for a determination of the proper amount of Father's child support obligation.[2] The court should make a determination regarding Father's income by deducting (1) any ordinary and reasonable expenses of self-employment necessary to produce income and (2) the amount of the trail income distributed as a marital asset. The court should consider, however, any additional income generated by this asset after the division. *See* Tenn. Code Ann. § 36-4-121(b)(1)(E); *see also Ghorashi-Bajestani v. Bajestani*, No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *5 (Tenn. Ct. App. Sept. 24, 2013) ("[T]he trial court did not err in failing to include the principal amount of the deferred compensation account as income for child support purposes, but the court should have considered any appreciation thereon or income stream generated therefrom as income in the calculation of child support."), *perm. app. denied* (Tenn. Mar. 5, 2014).

## VII. Alimony

Father also contends that the trial court erred in its award of spousal support. The trial court awarded alimony *in futuro* to Mother in the amount of $1,500 per month.

---

[2] We note that "[p]arents shall continue to be responsible for the support of each child for whom they are responsible after the child reaches eighteen (18) years of age if the child is in high school. The duty of support shall continue until the child graduates from high school or the class of which the child is a member when the child attains eighteen (18) years of age graduates, whichever occurs first." Tenn. Code Ann. § 34-1-102 (2015). Although testimony indicated that K.F. was in high school at the time of trial, the record is silent regarding his expected date of graduation.

Father asserts that the award is erroneous in type, length, and amount. Without addressing the specific arguments raised by Father, we again note that the trial court erred in its determination regarding the amount of Father's income for the reasons set forth above. *See* Tenn. Code Ann. § 36-4-121(b)(1)(E) ("[A]ssets distributed as marital property will not be considered as income for child support or alimony purposes, except to the extent the asset will create additional income after the division . . . ."). Inasmuch as the trial court considered the asset of trail income, which had been divided as marital property, as income to Father for the purpose of setting alimony, such determination is erroneous.

We therefore vacate the alimony determination and remand to the trial court with instructions to determine Father's income without consideration of the amount of the trail income distributed as a marital asset. The trial court should consider, however, any additional income generated by this asset after the division. *See* Tenn. Code Ann. § 36-4-121(b)(1)(E). Once Father's income has been established, the trial court can make a determination regarding alimony in accordance with the applicable statutory factors. *See* Tenn. Code Ann. § 36-5-121(i).

## VIII. Attorney's Fees on Appeal

Finally, each party respectively argues that he or she should receive an award of attorney's fees on appeal. Mother insists that she is the financially disadvantaged spouse and does not have the ability to pay fees. Father asserts that he should receive a fee award due to the "classification errors and inequities" caused by the trial court's judgment. As this Court has previously elucidated:

> Our supreme court has defined the factors that should be applied when considering a request for attorney fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. *See Folk v. Folk,* 357 S.W.2d 828, 829 (Tenn. 1962).

*Dulin v. Dulin,* No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003). Considering these factors, we determine that each party has the ability to pay attorney's fees and that both parties were partially successful on appeal. We also determine that the appeal was sought in good faith. Therefore, we decline to award attorney's fees in this matter.

## IX.  Conclusion

For the foregoing reasons, we vacate the trial court's determination regarding the amount of child support and alimony to be paid by Father.  We remand this matter to the trial court for a proper determination regarding Father's income for child support and alimony purposes in accordance with this Opinion, as well as an appropriate calculation of child support and a determination of alimony owed to Mother resulting therefrom.  We determine Father's issue regarding the allocation of days in the permanent parenting plan to be moot.  We affirm the trial court's judgment in all other respects.  We decline to award attorney's fees on appeal to either party.  Costs on appeal are assessed one-half to the appellant, Roger Darnell Fuller, and one-half to the appellee, Erin Alford Fuller.

_____
THOMAS R. FRIERSON, II, JUDGE